Joseph F. Falco, J.
At approximately 3:00 p.m. on the 17th day of August, 1967 the Mayor of the City of Syracuse proclaimed a state of special emergency in two separate sections of the city and invoked all of the powers vested in him under chapter 16 of article 17 of the Revised General Ordinances of the City of Syracuse. He further declared that a curfew was to be imposed under subdivision (d) of section 58 of said ordinance, to commence at 8:00 p.m. on said date and continue until 6:00 a.m. on the 18th day of August, 1967. At approximately 10:00 p.m. on the 17th day of August, 1967 the Mayor amended his original declaration and proclaimed a state of special emergency and curfew throughout the entire City of Syracuse to end at 6:00 a.m. on the 18th.
At approximately 3:30 p.m. on the 18th day of August, 1967 the Mayor declared a state of special emergency existed citywide and invoked all of the powers vested in him under article 17. The curfew under subdivision (d) of section 58 was to begin at 12 midnight on August 18, 1967 and continue until 6:00 a.m. on the 19th.
Sometime during • the afternoon of the 19th the Mayor declared a state of special emergency existed city-wide and again invoked all of the powers vested in him under article 17. *588 The curfew under subdivision (d) of section 58 was to begin at 12 midnight on August 19, and continue until 6:00 a.m. on the 20th.
All of the defendants were arrested on the public streets of the City of Syracuse for a violation of subdivision (d) of section 58 of said ordinance. Defendant John Lee Smith was arrested in the eight hundred block of South Salina Street at 12:50 a.m. on the 18th day of August, 1967, defendant Major Henry Kearse was arrested in the twelve hundred • block of South State Street at 12:15 a.m. on the 19th day of August, 1967, and defendant Walter Moorer ivas arrested on the sidewalk in the twelve hundred block of South State Street at 2:40 a.m. on the 19th day of August, 1967.
The defendants now move this court for a dismissal of the information against them on the grounds that the city ordinance is unconstitutional on its face in that (1) it is an unlawful delegation of legislative authority from the City Council to the Mayor, (2) that the city has tried to legislate in an area which has been fully pre-empted by State law, (3) that it denies the defendants their constitutionally guaranteed liberties, (4) it is overreaching and excessively broad and on the further ground that the ordinance is susceptible to arbitrary enforcement in violation of the defendants’ constitutional rights.
The ordinance in question was enacted by the Syracuse Common Council and became law on June 19, 1967 and is as follows:
“ Chapter 16. offenses, miscellaneous.
“ Article 17. special emebgency.
“ 16-57. Declaration by Mayor.
£ ‘ In the event of a conflagration, storm, flood, earthquake, aircraft accident, enemy attack, power failure, or if the public peace is threatened or life or property may be endangered, the Mayor may, in his discretion, declare a state of special emergency in all or any part or parts of the city.
££ 16-58. Emergency Powers.
‘£ Whenever the Mayor declares the existence of a special emergency, and during such period, the Mayor shall have the power to invoke any or all of the following provisions which shall apply only to the part or parts of the city declared to be in a state of special emergency:
££ (a) Alcoholic Beverages.
££ No person shall consume any alcoholic beverages on or in a public street, park, square or building.
££ (b) Weapons.
*589 “No person shall carry or possess any rock, bottle, club, brick, incendiary missile, firearm or any instrument of offensive or defensive combat unless in the performance of his official duties or authorized by the Mayor or his duly designated representative.
“ (c) Restricted Areas.
“ No person shall enter any such part or parts of the city unless he be a resident thereof, or in the performance of his official duties, or authorized by the Mayor or his duly designated representative.
“(d) Curfew.
“ No person shall enter or remain in any public street, park, square or building in any such part or parts of the city during the hours of the day as may be prescribed by the Mayor. ‘116-59. Publication of Declaration.
“ If the Mayor invokes any or all of the provisions of Section 16-58 thereof, he shall immediately distribute a written declaration thereof to the news media in the city accompanied by a written request that each publish or broadcast it as soon as possible.
“ 16-60. Penalty.
‘‘ A violation of any provision of this article shall be punishable by a fine not exceeding Five Hundred Dollars ($500.00) and not less than Twenty-Five Dollars ($25.00), or by imprisonment not exceeding one hundred eighty (180) days, or both such fine and imprisonment.
‘116-61. Effect of invalidity in part.
‘1 If any word, clause, sentence, paragraph, section or other part of this ordinance shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not effect, impair or invalidate the remainder thereof, but shall be confined in its operation to the word, clause, sentence, paragraph or section or other part thereof, directly involved in the controversy in which such judgment shall have been rendered.” (Added by ordinance adopted June 19, 1967, .p. 256.)
Let us now look to the first argument that it is an unlawful delegation of legislative authority from the City Council to the Mayor, for if this is true the whole ordinance must fall.
Local governmental units are creatures of, and exercise only those powers delegated to them by the State. (Seaman v. Fedourich, 16 N Y 2d 94; N. Y. Const., art. Ill, § 1; art. IX.)
Article IV of the Charter of the City of Syracuse, effective January 1, 1962 (Local Laws, 1960 of City of Syracuse, No. 13) provides as follows in section 4-101:
*590 ‘' Legislative Powers Vested in the Council. All legislative powers heretofore, now or hereinafter vested in the City or exercised by any person or body in connection with any activity within the City shall be exercised by the Council.”
We must draw a distinction between the delegation of a power to make the law, which necessarily involves a decision as to what it shall be and the conferring of an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done, but to the latter, no valid objection can be made. (Tropp v. Knickerbocker Vil., 205 Misc. 200, affd. 284 App. Div. 935; Municipal Home Rule Law, art. 2, § 10, subd. 4, par. [a].) The rule is settled that while the Legislature may not delegate its powers to make' a law, it may provide that a law will become operative on the happening of a certain contingency or further event. (People v. Fire Assn. of Philadelphia, 92 N. Y. 311, affd. 119 U. S. 110.) Indeed, it has been said that most laws are made to meet future facts, since, although they are “ complete when passed, they sleep until the contingency contemplated sets them in motion.” The laAV-making branch of government has the right to delegate to some other agency the power to determine facts and conditions on which the operation or suspension of a statute depends. (Matter of Olp v. Town of Brighton, 173 Misc. 1079, affd. 262 App. Div. 944.)
The ordinance passed by the Common Council of the City of Syracuse was complete in all of its terms and provisions when it left their hands, nothing which was strictly within their legislative function was left to the judgment of the Mayor. It had enacted an ordinance in broad outlines, leaving to the Mayor the duty of arranging the details. This it had the right to do.
Let us now look to the question of pre-emption, for if this in fact is true, again the law may not stand. Hew York Jurisprudence (vol. 39, Municipal Corporations, § 178) in discussing powers reserved to the State has this to say: no municipality can pass a valid local law which transcends the Constitution of the State or a general statute. In short, ordinances must not be inconsistent with the laws of the State. (Bareham v. City of Rochester, 128 Misc. 642, mod. 221 App. Div. 36.) A local ordinance attempting to impose any additional regulation in a field where the State has already acted will be regarded as conflicting with the State law and will be held invalid. (Matter of Kress & Co. v. Department of Health, 283 N. Y. 55.) The defendants contend that subdivision 6 of section 1903 of the Penal Law of the State which was in effect on June 19, 1967
*591 (now § 400.00 of the new Penal Law, eff. Sept. 1, 1967), which has to do with the licensing of firearms, states:
" 6. License: validity. Any license issued pursuant to this section shall be valid notwithstanding the provisions of any local law or ordinance.” (Italics added.) Defendants contend the Council of the City of Syracuse was without power to prohibit the carrying or possessing of a firearm legally licensed by the State of New York and no such exception is made in the ordinance. The court is in agreement with defendants’ contention in this regard. Whenever what would be permissible under the State law becomes a violation of local law, the latter is invalid. (Wholesale Laundry Bd. of Trade v. City of New York, 17 A D 2d 327.)
Defendants further contend that the State has pre-empted the field of riot control and prevention by chapter 4 of title II of part II of the Code of Criminal Procedure (§ 102 et seq.) entitled Prevention and Suppression of Riots, and article 188 of the Penal Law of 1909 which deals with riots and unlawful assembly. It is the defendants’ contention that these State laws provide the city with' more than adequate tools with which to deal with the problem. They do not contend that the subject ordinance conflicts with any provisions of the State law, but that it was merely excess as the State had already acted in this area. Subdivision 13 of section 20 of the General City Law (Grant of specific powers) gives the city power to “ maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto ”. As long as the city in exercising this specific power does not conflict with or is not inconsistent with the Constitution or the laws of the State, its acts are valid. (Matter of Tartaglia v. McLaughlin, 190 Misc. 266, affd. 273 App. Div. 821.) I do not believe the State has indicated by the sections hereinbefore mentioned its intention to pre-empt the field in this matter.
The last contention by the defendants in the field of preemption is that the city ordinance conflicts with State law on the use of city streets thereby making certain portions of the ordinance invalid. It is the defendants ’ contention that the city streets are held by the city as a trustee for the benefit of the public (Hague v. C. I. O., 307 U. S. 496; Associated Transport v. City of Syracuse, 196 Misc. 1031) and that to prohibit the public from having free access to the streets is in conflict with State law. (Vehicle and Traffic Law, §§ 1600, 1604.) The defendants agree that State law gives the city the power to regulate the use of its streets if such regulation promotes the *592 general comfort and convenience of the public but that nowhere does State law give the city the right of total prohibition in the use of its streets. (People v. Grant, 306 N. Y. 258.)
The prosecution on the other hand cites subdivisions 13 and 22 of section 20 of the General City Law as the authority for the city enacting the ordinance in question. The prosecution contends that this so-called police power of the city is the legal authority for the total prohibition in the use of the city streets as set out in subdivision (d) of section 58 of the ordinance. The rule is too well established to warrant citation of authority that a municipality, under its police power, may enact legislation which may interfere with the personal liberties of its citizens where the general welfare, public health and safety demand such enactment, but this rule is also subject to the rule of reasonableness in relation to the objects to be attained.
Despite the widespread prevalence of curfew ordinances, the cases dealing with the constitutionality of such statutes are few and in most instances not the decision of the highest court in the State. Generally curfew laws are of one or the other of two types. The “ presence ” type in which it is forbidden to be on the street after a certain time and the “loitering” or “ remaining ” type in which the proscription is against loitering, congregating or remaining on the street after a certain time. Both types usually have exceptions, excepting persons in the performance of official duties, persons on emergency missions or persons authorized by certain officials.
The “presence” type and those having to do with total prohibition were all declared invalid. (Matter of McCarver, 39 Tex. Cr. Rep. 448; Matter of Hall, 50 Cal. App. 786; Alves v. Justice Court of Chico Judicial Dist., 148 Cal. App. 2d 419.) The “'remaining ” or “loitering” type were all held valid. (People v. Walton, 70 Cal. App. 2d 862; Thistlewood v. Trial Magistrate for Ocean City, 236 Md. 548.) It is interesting to note that the decision in the Thistlewood case (supra, p. 557) which is a much publicized and cited curfew ordinance case, states in part ‘ ‘ the fact that its limited purpose was to prevent loitering or remaining in public areas, as opposed to merely using them for passage, and, finally, the fact that it was directed only to minors who are peculiarly subject to regulation and control by the State ” (italics supplied) leads this court to believe that the Maryland Court of Appeals, would invalidate a “ presence ” or total prohibition type ordinance. A recent opinion of the Attorney General of California 65/215, May 24, 1967, stating a curfew ordinance prohibiting loitering in public streets is within the limits of legitimacy because it does not outlaw *593 simple presence in public places, seems to indicate to this court that ‘ ‘ presence ’ ’ or total prohibition type ordinances would be held invalid in California also.
Which of the two types does subdivision (d) of section 58 fit into? I think by its very wording it is apparent that it is of both types, the “presence” as well as the “remaining” type. In other words, the ordinance makes it a crime to be on the street. It makes what is ordinarily legitimate conduct, criminal. The courts have consistently held that the legislatures cannot enact laws so sweeping in nature that they impinge on constitutionally guaranteed freedoms and liberties. The Legislature may not validly make it a crime to do something which is innocent in itself, merely because it is sometimes done improperly. (NAACP v. Alabama, 377 U. S. 288; Dombrowski v. Pfister, 380 U. S. 479; People v. Bunis, 9 N Y 2d 1; Fenster v. Leary, 20 N Y 2d 309.) The courts have usually condemned total prohibition laws when they have to do with constitutionally guaranteed rights.
In Saia v. New York (334 U. S. 558) the court said that while it may be necessary to regulate the use of sound trucks, the court found total prohibition, together with the possibility of arbitrary application of the ordinance (as is usually the case in total prohibition laws) constituted a harsh encroachment on First Amendment rights. (People v. Katz, 21 N Y 2d 132 [1967].) There are no exceptions for any persons written into subdivision (d) of section 58. What of the police officer, the fireman, the person going to or from their home or employment, the person on an emergency? A reading of subdivision (c) of section 58 shows us that a resident of a restricted area is permitted to enter that restricted area, it also allows persons on official duties (policemen, firemen) and persons authorized by the Mayor to enter the restricted area. Subdivision (d) of section 58 makes no exceptions. Are we to read into subdivision (d) of section 58 the exceptions outlined in subdivision (c) of 58? The prosecution in their brief cite People v. Grogan (260 N. Y. 138) for the proposition that a statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required by them, the courts should view the statute from the standpoint of the reasonable man who might be subject to its terms. Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. With this proposition this court is in complete agreement. I think subdivision (d) of section 58 is definite *594 and specific and informs those who are subject to it what is required of them. Unlike subdivision (c) of section 58, which this court thinks is reasonable regulation, subdivision (d) of section 58 states “ No person shall enter or remain in any public street ’ ’. In other words, total prohibition from using the streets of the city for any purpose whatsoever without exception. ■ The law could not be plainer and that is the reason this court believes subdivision (d) of section 58 must be declared invalid.
A curfew law, like any other which restricts the activities or conduct of individuals, adults or minors, must not exceed the bounds of reasonableness. Three primary tests have often been invoked. (1) Is there an evil? (2) Do the means selected to curb the evil have a real and substantial relation to the result sought? (3) If the answer to the first two inquiries is yes, do the means availed of unduly infringe or oppose fundamental rights of those whose activities or conduct is curbed? (Thistlewood v. Trial Magistrate for Ocean City, 236 Md. 548, supra.) Section 57 of the ordinance demonstrates the evil to be dealt with. The means selected to curb the evil have a real and substantial relation to the result sought; but the means availed of, the total prohibition of all persons without exception from all of the streets of the city, unduly infringes upon fundamental rights guaranteed by the New York and United States Constitutions.
This is by no means a blanket condemnation of all curfew ordinances by this court, but as Judge Keating said in his opinion in the Katz case (21 N Y 2d 132, 135, supra): “ while we are in sympathy with the general purpose of the statute involved in this case, its susceptibility to arbitrary enforcement and its use of total prohibition rather than reasonable regulation render it unconstitutional.” The hearing had on this motion disclosed that 22 eases out of 55 cases of arrest for a violation of the curfew section of the ordinance have already been dismissed: 17 on motion of the prosecutor himself and 5 on motion of defense counsel with no opposition on the part of the prosecution. This would tend to indicate that the broad and total prohibitive language of subdivision (d) of section 58 of the ordinance together with the lack of any defined or implied exceptions for judging violations renders it peculiarly susceptible to arbitrary enforcement, the very thing condemned in the Katz case (supra) by the highest court of this State.
This court believes a narrowly drawn ordinance can achieve the laudable purpose the City Council has in mind without *595 sacrificing either individual constitutional rights or the public right to reasonably regulated use of the public streets.
The defendants contend further that section 60 of the ordinance in question, having to do with penalties, is invalid on its face in that the penalties provided greatly exceed those which the City Council is authorized to enact under its own Charter. This court has previously stated that local governments can exercise only those powers delegated to them by the State. (1ST. Y. Const., art. IX.) The State has given the city the power to regulate its affairs by ordinances and local laws. (General City Law, § 20; Municipal Home Buie Law, § 10.)
Let us see what the city has done with this power on the subject of penalties. Section 8-118 of the Charter of the City of Syracuse which is a local law effective January 1, 1962 states in part ‘ ‘ the Council may within any such local law or ordinance, or by general ordinance, provide that any person guilty of such violation shall be liable to a fine which shall not exceed one hundred fifty dollars in amount, or imprisonment not exceeding one hundred fifty days, or both such fine and imprisonment, or such ordinance may provide for a penalty not exceeding five hundred dollars to be recovered by the city in a civil action.” Section 1-8 of chapter 1 of the Bevised General Ordinances of the City of Syracuse effective January 1, 1962 states in part ‘ ‘ the violation of any such provision shall be an offense and any person guilty of such violation shall be liable to a fine .which shall not exceed One Hundred Fifty Dollars ($150.00) in amount or imprisonment not exceeding one hundred fifty (150) days or both such fine and imprisonment or such ordinance may provide for a penalty not exceeding Five Hundred Dollars ($500.00) to be recovered by the city in a civil action ”. The only other authority for penalties that a city may impose is to be found in State law (Second Class Cities Law, § 42): “Any person violating an ordinance of the common council shall be guilty of a misdemeanor, except that an ordinance may provide that a violation thereof shall be an offense, and the common council may provide therein or by general ordinance, that any person guilty of such violation shall be liable to a fine which shall not exceed one hundred fifty dollars in amount, or to imprisonment not exceeding one hundred fifty days, or to both such fine and imprisonment, or such ordinance may provide for a penalty, not exceeding five hundred dollars to be recovered by the city in a civil action. ’ ’
Prosecution contends that subdivision 22 of section 20 of the General City Law is the authority for a penalty in excess of *596 that enumerated in the City Charter, the Revised Ordinances and section 42 of the Second Class Cities Law. This court disagrees with this contention. Subdivision 22 of section 20 of the General City Law merely gives the cities the right to provide penalties and imprisonments to punish violators. This the city did do in enacting the City Charter, a local law, and the Revised General Ordinances, and these laws specifically state what the penalties are and what they may not exceed. (People ex rel. Wolff v. Margolies, 166 Misc. 135.) This court finds that section 60 of the ordinance in question provides for a penalty in excess of that which is legally authorized by local or State law and is therefore invalid. However, this does not leave article 17 without a penalty, as the provisions of section 1-8 of the Revised General Ordinances for the City of Syracuse, which provide for a lesser penalty, would be applicable.
In summary then and for the reasons hereinbefore mentioned, this court holds that so much of subdivision (b) of section 58 entitled “Weapons” having to do with firearms is invalid, subdivision (d) of section 58 entitled “ Curfew” is invalid in its entirety, and section 60 entitled ‘ ‘ Penalty ’ ’ is invalid in its entirety.
We now come to the question of whether the invalidity of the words and sections mentioned invalidates the whole ordinance. The test, as Chief Judge Cardozo observed in People v. Maucuso (255 N. Y. 463, 474): “ The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether ”. The inclusion of a separability clause in the legislative act raises a presumption that the Legislature intended the act to be divisible. (Williams v. Standard Oil Co., 278 U. ¡3. 235, 242.) The subject ordinance has such a clause, section 61 entitled “Effect of invalidity in part ”. The remainder of the ordinance, which in fact is capable of separation, is declared valid.
The motions of the defendants to dismiss herein are granted.