David 0. Boehm, J.
This is an appeal from an order of the Bochester City Court (Celia, J.) dismissing an information against defendant Samuel Wilkerson.
Defendant Samuel Wilkerson and five others, Scott Sherman, Morris Holiday, Charles Gross, Larry Spaight and Anther Wyatt, were arrested December 11, 1971 in a house in the City of Bochester and charged with violating section 44-12 of the Code of the City of Bochester. Wilkerson was charged with being a keeper of a gambling establishment in violation of subdivision A of section 4L-12 and the others were charged with being inmates of a gambling establishment in violation of subdivision B.
The informations lodged against the defendants allege that they were observed inside thé premises gathered around a felt covered table, engaging in a game of dice and that there was a quantity of dice on the table and money being exchanged. The information against Wilkerson alleges that he was in charge of the game.
Defendants moved to dismiss the informations upon the ground of the ordinance’s unconstitutionality. The City Court, in its decision dated January 18, 1972, found section 44-12 to be unconstitutional in its entirety and granted the motion to dismiss the informations against all of the defendants.
However, the only order in the record on appeal is one dismissing the information against Samuel Wilkerson. There are no orders as to the other defendants. Apparently none were *897 entered. Also, there is only one notice of appeal in the record and it appeals solely from the Wilkerson order. Accordingly, the only appeal that may be considered is from the order dismissing the information against Samuel Wilkerson dealing with subdivision A of section 44 — 12.
Chapter 44 of the Code of the City of Rochester was adopted by the City Council on September 8, 1964. Section 44-12 deals with gambling activity and subdivision A states: “ No person shall knowingly keep or use, or permit to be kept or used, any gambling device or devices or gambling establishment or establishments. ’ ’
Section 44 — 1 defines “ Gambling Device ” as follows: “ Shall mean any apparatus, article, instrument, slot machine, table or any written, printed, marked or in any manner filled-in bet slip, parlay sheet or slip, pool sheet or slip, or any other paper, writing or document representing a bet or wager on any sporting event, amateur or professional or any horse race or any occurrence to be determined by chance, lot, unknown or contingent event at a time subsequent to placing of a wager thereon, or any combination of the aforementioned to be used in any act or acts of unlawful betting, gambling, playing or wagering for money or anything of value.”
Section 44-1 defines “ Gambling Establishment ” as follows: “ Shall mean any room, building, structure, shelter, or vehicle, or any part thereof, of any description, within or upon which, any act or acts of unlawful betting, gambling, playing or wagering for money or anything of value are conducted.”
The determination of the issues raised in this appeal will necessarily depend upon whether there is a general State law covering the same field and, if so, whether the city ordinance is inconsistent with the State legislation or whether the State, by the passage of such legislation, has manifested an intention of pre-empting the field.
The power of a municipality to enact local laws is conferred by article IX of the State Constitution. However, such local laws may not be inconsistent with a general law of the State relating to the same enumerated subject. Paragraph (10) of subdivision (C) of section 2 lists ‘‘ protection, order, conduct, safety, health and well-being of persons or property” among the subjects enumerated. This same power to legislate is made subject to the same limitations in subdivision 13 of section 20 of the General City Law.
The Constitution defines a general law as one which “ in terms and in effect applies alike to all counties, all counties other than *898 those wholly included within a city, all cities, all towns or all villages.” (art. IX, § 3, subd. [d], par. [1]; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 32, subd. b).
Thus, the power of local government to legislate is limited by the requirement that its local laws not be in conflict with the State Constitution nor inconsistent with the general laws of the State (People v. Lewis, 295 N. Y. 42; Wholesale Laundry Bd. of Trade v. City of New York, 17 A D 2d 327, affd. 12 N Y 2d 998; People v. Del Gardo, 1 Misc 2d 821; People v. Kearse, 56 Misc 2d 586).
It is beyond cavil that the Penal Law of the State is a general law. It has general application to all of the inhabitants of the State and it has been specifically so held and applied (Town of Babylon v. Conte, 61 Misc 2d 1055; People v. Conte, 64 Misc 2d 573; People v. Del Gardo, supra; People v. Kearse, supra).
It is also well-settled law that where a local law is inconsistent or in conflict with a State law of general character and Statewide application, the local law is invalid. A local law, therefore, may not prohibit what a State law permits (Wholesale Laundry Bd. of Trade v. City of New York, supra; Kindermann Fireproof Stor. Warehouses v. City of New York, 39 A D 2d 266; People v. Kearse, supra; Town of Babylon v. Conte, supra; People v. Conte, supra; Kim v. Town of Orangetown, 66 Misc 2d 364).
If we look to the history of State antigambling legislation, there is obvious an intention on the part of the Legislature not to make the casual player, contestant or bettor criminally liable.
In 1933, the Court of Appeals, in discussing the antigambling laws contained in the former Penal Law, pointed out: ‘6 Casual betting or gaming by individuals as distinguished from betting or gambling as a business or profession, is not a crime, [citations] The distinction between the two species has long ‘ obtained in this state where ordinary betting has never been made a crime * * * while the keeping of a gambling house, selling lottery tickets and the profession of a common gambler have been subjected to severe punishment.’ ” (Watts v. Malatesta, 262 N. Y. 80, 82).
Thus, in a case almost on all fours with the one under consideration, where defendants were found in an apartment sitting and standing around a large table at which a card game was in progress and on which there was a quantity of money, poker chips and four decks of playing cards, an information charging them with being common gamblers in violation of section 970 of the former Penal Law was dismissed. ‘ ‘ Participation in a *899 gambling game ” the court said, “or even in a series of gambling games on the same terms as other players, for amusement or recreation, is lawful in this State. What is prohibited * * * is professional or commercial gambling.” (People v. Marconi, 27 Misc 2d 348, 349; see, also, People v. Bright, 203 N. Y. 73; People ex rel. Guido v. Calkins, 9 N Y 2d 77).
The, new Penal Law continues this distinction and maintains the exemption from criminal liability of ‘6 bare ‘ gambling ’ or ‘ player ’ activity.” (Commission Staff Notes, Penal Law, art. 225; see, also, People v. Di Carlo, 62 Misc 2d 638).
The Legislature not only has excluded the “player” from the reach of the Penal Law, but in order to make quite certain that there be no doubt of its intention to do so, went on to define what a “ player ” is (Penal Law, § 225, subd. 3).
However, section 44-12 of the Code of the City of Rochester, in complete disregard of the State legislation, makes such activity illegal. For example, subdivision C would make illegal a sporting bet between golfers on the outcome of their game if they played within the Rochester city limits in the Durand Eastman Park or Genesee Valley Park golf courses.
Yet, it was held as far back as 1908 that such conduct was never contemplated as the kind of activity which the Legislature deemed it necessary to curb (People ex rel. Sterling v. Sheriff of Nassau County, 60 Misc. 326).
The only time a city may enact laws which are more restrictive than general State legislation on the same subject, is “ where there is a real distinction between the city and other parts of the State. They must be based upon special conditions existing in the city.” (Matter of Kress & Co. v. Department of Health, 283 N. Y. 55, 59).
The District Attorney has not offered, either in his brief or in his argument, anything to show that there is a special situation unique to the City of Rochester which requires the existence of the ordinance sought to be preserved. To say, as he does, that the City Council’s purpose was to solve a “ local problem which, in the City Council’s opinion, required local legislation,” without more, is to beg the question.
As stated by the court in Patterson v. Daquet (62 Misc 2d 106, 111), when declaring unconstitutional New York City’s Rent Stabilization Law, “ The delegation by the State Legislature to cities under home rule laws does not give any city (large or small) even though desirable legal authority to enact any and all ordinances it may deem good and necessary for the good and welfare of their city.” (emphasis in original; see, also, 39 N. Y. Jur., Municipal Corporations, § 178).
*900 Turning to section 44AL2 of the Code of the City of Rochester, we note that subdivision A seems to forbid the same conduct inhibited by section 225.30 of the State Penal Law, which reads as follows:
‘1 A person is guilty of possession of a gambling device when, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:
“ 1. A slot machine; or
‘1 2. Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.”
“ Gambling device ” is defined in paragraph 7 of section 225.00, as follows: “ ‘ Gambling device ’ means any device, machine, paraphernalia or equipment which is used or usable in the playing phases of any gambling activity, whether such activity consists of gambling between persons or gambling by a person involving the playing of a machine. Notwithstanding the foregoing, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices.”
A comparison of this definition with that of the Code of the City of Rochester indicates that possession of the same kind of gambling equipment is prohibited by both laws. In that respect, they are generally compatible. However, the local law in its definition of “gambling establishment” includes a location where the casual player as well as the professional gambler is playing. To that extent the ordinance does conflict with State law.
Since section 44 — 13 of the code specifically makes the various provisions of chapter 44 severable (see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150, subd. d), can the inconsistent portion of paragraph A be severed from that part not in conflict with State law, thereby saving the balance 1 This may be done if the State has not pre-empted the field of gambling.
Gambling is a crime which is not “ essentially local ” and it has been said that such crimes fall within that category of affairs which are “ exclusively those of the State.” (Adler v. Deegan, 251 N. Y. 467, 489, concurring opn.). ^
Furthermore, gambling is a constitutionally prohibited activity (N. Y. Const., art. I, § 9). This prohibition is not self-executing. , It requires enforcement by the Legislature (People v. McLaughlin, 128 App. Div. 599; People v. Mumford, 171 Misc. *901 397). And, since the Constitution commits to the Legislature . the duty of preventing gambling, the measures to be adopted in furtherance of that end also rest in the legislative discretion (People v. Stedeker, 175 N. Y. 57).
The State Legislature, as required by the Constitution, has legislated in the field of gambling and by the Penal Law, delineated the conduct to be prohibited throughout the State.
Accordingly, by so legislating, the State has fully pre-empted the area, thereby leaving no room for local legislation. Where the State law indicates a purpose to occupy the entire field, local laws are prohibited regardless of whether or not they duplicate or otherwise conflict with the State law. (Robin v. Incorporated Vil. of Hempstead, 30 N Y 2d 347; 39 N. Y. Jut., Municipal Corporations, § 178.)
Because the State has pre-empted the field of gambling, the City Court order dismissing the information against defendant Wilkerson must be affirmed. It is accordingly unnecessary to discuss the issue of vagueness.
The appellant argues that since the defendant was not charged with violating subdivisions C, D or E of section 44-12, these subdivisions were not before the court and City Court had no authority to declare the entire ordinance unconstitutional. Counsel for the respondent conceded this upon oral argument.
The decision of City Court went beyond the issues immediately before it and, accordingly, subdivisions C, D and E of section 44-12 will remain undisturbed, at least until they are directly attacked. No determination is made with respect to subdivision B since, for the reason earlier stated, it is not before me.