■ EDNA FRANZA et al., Respondents-Appellants, v HUGH L. CAREY et al., Appellants-Respondents. — Order, Supreme Court, New York County (Eve Preminger, J.), entered August 27, 1982, holding that article 39 of the General Business Law is not impermissibly vague on its face, but, with respect to the sale and display of multiuse items, granting plaintiffs' application for a preliminary injunction and directing a hearing to determine as to such items the constitutionality of article 39, modified, on the law, to the extent of declaring subdivision 2 of section 852 of the General Business Law to be unconstitutional, and severing that section, vacating the preliminary injunction, and dismissing the complaint, and otherwise affirmed, without costs. ¶ In his opinion, dissenting in part from the conclusions here reached, Justice Carro fully sets forth the provisions of article 39 of the General Business Law, the statute with which we are concerned, the procedural history of this litigation, and the relevant facts. ¶ We agree with Special Term, essentially for the reasons set forth in Special Term's detailed and thoughtful opinion (115 Misc 2d 882), that article 39 is not impermissibly vague. This view is in accord with what is now clearly the overwhelming weight of relevant authority. (See, e.g., Hoffman Estates v Flipside, Hoffman Estates, 455 US 489; Town Tobacconist v Kimmelman, 94 NJ 85; Weiler v Carpenter, 695 F2d 1348; Casbah, Inc. v Thone, 651 F2d 551; New England Accessories Trade Assn. v Tierney, 691 F2d 35, 36.) ¶ We are in essential agreement with Special Term's conclusion that a violation of article 39 occurs only if the violator is shown to have a culpable intent. As applied to retailers, possession of drug paraphernalia does not give rise to a violation unless the retailer intends to sell the drug paraphernalia to those who will use it in a prohibited manner. The phrase in section 851 of the General Business Law — "under circumstances evincing knowledge" — seems to us reasonably construed to require a showing that a retailer has reason from the circumstances to know, and in fact believes, that the buyer of drug paraphernalia intends to use it for a proscribed purpose. (Cf. Town Tobacconist v Kimmelman, supra.) ¶ So construed, we perceive no basis for Special Term's conclusion that a hearing was required prior to enforcement

of the statute to determine the constitutionality of its application to one or another of the so-called multiple-use items that the plaintiffs possess. Indeed, since the critical issue in connection with any enforcement of the statute will be the intent of the defendant and, with respect to sales of drug paraphernalia, the actual belief of the defendant as to its intended use, the circumstances are inappropriate for pre-enforcement declaratory relief. ¶ A more troublesome problem is presented by the forfeiture provision set forth in subdivision 2 of section 852, which provides in pertinent part: "The possession with intent to sell or offering for sale of drug-related paraphernalia as defined herein is hereby declared to be a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited". ¶ Special Term was clearly on sound ground in concluding that the omission of a specific requirement of probable cause in the subdivision is not reasonably interpreted as diluting the requirement that there be probable cause prior to any search or seizure undertaken pursuant to the subdivision. More disturbing is the absence from this subdivision of any provision for postseizure notice and hearing, which contrasts sharply with the hearing requirements set forth in subdivision 1 of section 852 and section 853 addressed to other aspects of the problem. We are unable to perceive in the statute or in the other authorities relied upon by defendants a sufficient basis for the court to construe the statute as mandating such a postseizure hearing. (See *Weiler v Carpenter, supra,* at p 1350.) The apparently contrary conclusion reached in *Casbah, Inc. v Thone* (*supra*) was clearly influenced by the understanding that Nebraska law independently assured the availability of such a hearing. No comparable authority in this State has been called to our attention. ¶ *Matter of Buttonow* (23 NY2d 385), the principal authority advanced in support of our right to construe the challenged section to require a hearing that it does not explicitly require, seems to us so clearly distinguishable as to render that decision of doubtful assistance here. (Cf. *Snead v Department of Social Servs.,* 355 F Supp 764 [SDNY]; *People v Lee,* 58 NY2d 491.) ¶ Accordingly, we find that the omission from subdivision 2 of section 852 of the General Business Law of any right to at least a postseizure hearing prior to forfeiture violates the due process clause of the Constitution. (See *Weiler v Carpenter, supra,* at p 1350; cf. *Calero-Toledo v Pearson Yacht Leasing Co.,* 416 US 663, 679-680.) There appears to be no persuasive reason why this invalid section may not properly be severed from the rest of the statute, and we accordingly do so. Concur — Kupferman, J. P., Sandler, Milonas and Alexander, JJ.

Carro, J., dissents in part in a memorandum as follows: At issue in this action for declaratory judgment is the constitutionality of article 39 of the General Business Law (§§ 850-853 ["Drug-Related Paraphernalia"]) and the question of whether, by application of the statutory principles of construction,[1] some part of this law may survive. These questions have not only been carefully considered by the Justice sitting in Supreme Court, from whence this appeal comes to us,[2] but review has also been had in the United States District Court for the Southern District of New York,[3] although that decision has no precedential effect upon our consideration.[4] In addition, a number of other

1. See, generally, McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subds a, d.
2. Opinion reported at 115 Misc 2d 882 (per Preminger, J.).
3. *Franza v Carey,* 518 F Supp 324 (SDNY [per Cannella, J.]).
4. Most of the plaintiffs here first brought suit in Federal court to challenge the similar Westchester County criminal ordinance. Although successful, for the most part, in District Court (*Brache v County of Westchester,* 507 F Supp 566), the Court of Appeals for the Second Circuit held that plaintiffs had no standing, and vacated the District Court injunction and remanded the case to that court with the direction to dismiss the suit. (658 F2d 47, cert den 455 US 1005.)

courts, Federal and State, have passed upon similar enactments and thereby provided their wisdom on the nettlesome issues before us.[5]

### THE STATUTE

Article 39 of the General Business Law is a civil prohibition of drug-related paraphernalia, aimed primarily at commercial retailers. Adopting the Public Health Law's[6] definition of "controlled substance," section 850 of the General Business Law goes on to define " 'Drug-related paraphernalia' " by setting out eight categories of "objects" whose purpose is, variously, the cultivation, handling, preparation or ingestion of a controlled substance.[7] In an apparent attempt to be generally all-inclusive, the listing is less than a hallmark of precision: for instance, "[k]its, used or designed for the purpose of planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance" (§ 850, subd 2, par [a]) could as easily apply to a flower pot and potting soil or a windowbox full of poppies, as to any specifically designed marihuana-growing kit. Obviously, the word "used" is of critical importance to the definition. ¶ Section 851 sets out the parameters of what constitutes an offense, stating that it is "a violation of this article for any person, firm or corporation to possess with intent to sell, offer for sale, or purchase drug-related paraphernalia under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes stated in subdivision two of section eight hundred fifty of this article." ¶ It is not clear from this language whether the Legislature intended to proscribe the buying and possession as well as the manufacture and sale of "drug-related paraphernalia". ¶ Section 852 is composed of two parts, the first of which (subd 1) authorizes localities to revoke any merchandizing license or permit previously issued "upon a finding, pursuant to a hearing held thereon, that such person, firm or corporation has sold or offered for sale merchandise in violation of this article." Subdivision 2 declares the "possession with intent to sell or offering for sale of drug-related paraphernalia" to be a "nuisance" and provides (without stating under what circumstances "any such drug-related paraphernalia shall be taken from the possession of any person") that the seized objects "shall be surrendered and forfeited to the sheriff of the county [or the appropriate police department head]", ¶ The last section, 853, entitled "Enforcement", authorizes the State Attorney-General or local officials to institute an action for an injunction against the prohibitions of section 851, and upon a court finding of violation, "civil penalties against such person, firm or corporation [shall be assessed] in an amount not less than one thousand dollars nor more than ten thousand dollars for each such violation."

### THE COMPLAINT

Plaintiffs own boutiques or novelty shops in which they offer for sale items they suspect may be prohibited by the statute. By order to show cause plaintiffs obtained a preliminary injunction against enforcement of the act against them, with their complaint seeking a declaration that the law is

In light of this disposition the parties stipulated and agreed to discontinue and vacate the second Federal action rather than press an appeal of Judge Cannella's decision. Accordingly, that decision is not binding upon this or any other court, although we are free to take note of the careful analysis therein, which we freely do.

Needless to say, plaintiffs have cured the defect which robbed them of standing in Federal court. (See 115 Misc 2d, at p 889.)

5. See, generally, Justice Preminger's decision at 115 Misc 2d 882 and cases cited throughout.

6. § 3302.

7. § 850, subd 2. The full act is set out in the Appendix.

unconstitutional in five ways. The preliminary injunction was argued as necessary because of plaintiffs' "highly visible" lawsuits in Federal court and specific visits to their shops by enforcement officials. Although plaintiffs have removed from their shelves items which are clearly intended for and capable of use only in connection with controlled substances, a number of objects remaining in their respective inventories are "multiple-use" items, i.e., as amenable to licit as to illicit use. Plaintiffs contend that the absence of enforcement guidelines and specificity in the definitions of objects renders the statute void for vagueness and an overbroad infringement of the First Amendment's protection for speech, presumably commercial speech. Moreover, the complaint calls into question whether the statute is rationally related to any legitimate legislative goal, and accuses the Legislature of promulgating a bill of attainder and violating the equal protection clause since the statute is allegedly directed against a certain kind of store — so-called "head shops". Lastly, plaintiffs argue that subdivision 2 of section 852 unconstitutionally authorizes warrantless seizure and forfeiture of their property without requiring any procedural due process. ¶ The court below rejected some of these contentions and construed the statute in a narrow fashion to mollify other objections. Thus holding the act to be facially constitutional, that court nonetheless continued the preliminary injunction so that the *status quo* would be maintained, and directed a trial on the issue of whether the statute may constitutionally be applied to the sale of specific multiuse items in plaintiffs' stores. The State defendants, by the Attorney-General, have appealed the grant of a preliminary injunction and direction to trial, asserting both the constitutionality of the statute and the inappropriateness of declaratory relief. Plaintiffs have cross-appealed to the extent the lower court construed subdivision 2 of section 852 to be constitutional. Together, these issues on appeal interlock inextricably, bringing the whole of the decision and order before us for review. ¶ Turning to the constitutional claims, I note my firm agreement with the lower court that there is no per se bar to the Legislature's stated goal of controlling illegal drug use through the prohibition of drug-related paraphernalia. That drug trafficking, with all of the attendant ill effects upon the citizenry, is a particularly egregious problem in this State need hardly be said. The almost annual revisions of the Penal Law relative to sale and possession of controlled substances document the never-ending battle on this field. (Cf. *People v Broadie,* 37 NY2d 100.) While undoubtedly plaintiffs have a "liberty" interest in marketing their goods free from unreasonable government restraints, as well as a "property" interest of which we shall say more later, the due process clauses of the Fifth and Fourteenth Amendments do not prohibit the Legislature from banning, in a properly drafted statute, the possession, sale and use of drug paraphernalia. Although "not beyond judicial inquiry", where the purpose of the law is so clearly a social evil within the State's competence to address, "the legislative judgment on economic and business matters is 'well-nigh conclusive.' " (*Poe v Ullman,* 367 US 497, 518 [Douglas, J., dissenting]; see, also, *Meyer v Nebraska,* 262 US 390, 400 ["reasonable relation to some purpose within the competency of the State to effect."]).[8] ¶ Similarly, plaintiffs' equal protection claim must fail, since no fundamental interest or suspect classification is present to invoke the "strict scrutiny" standard of review. (Cf. *Dunn v Blumstein,* 405 US 330; *Korematsu v United States,* 323 US 214; see, also, *Califano v Webster,* 430 US 313; *Craig v Boren,* 429 US 190.) Instead, it

---

8. See, also, *Hoffman Estates v Flipside, Hoffman Estates,* 455 US 489, 497, n 9: "A retailer's right to sell smoking accessories, and a purchaser's right to buy and use them are entitled only to minimal due process protection * * * Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use. See *Exxon Corp.* v. *Governor of Maryland,* 437 U. S. 117, 124-125 (1978)."

need only be shown that there is a rational relation to the obvious purpose of the act. (*Massachusetts Bd. of Retirement v Murgia,* 427 US 307.) The "head shop" classification meets this test. (Cf. *New Orleans v Dukes,* 427 US 297; *McGowan v Maryland,* 366 US 420; *Williamson v Lee Opt. Co.,* 348 US 483.) ¶ Plaintiffs' "overbreadth" argument is even less compelling. As pointed out in *Hoffman Estates v Flipside, Hoffman Estates* (455 US 489, 497), this First Amendment "doctrine does not apply to commercial speech." (Citing to *Central Hudson Gas & Elec. v Public Serv. Comm.,* 447 US 557, 565, n 8.) ¶ The court below, relying upon the *Flipside* decision, further rejected the challenge of facial vagueness. While I agree that purveyors of single-use items can be said to have sufficient notice that those items "unquestionably constituted 'drug paraphernalia' to drug users" (*Brache v County of Westchester,* 507 F Supp 566, 573) so as to thwart an attack of the statute on facial vagueness grounds (cf. *Brache v County of Westchester,* 658 F2d 47, 50, 52, n 7), that cannot be the end of the inquiry. Merely to recognize that the act is not "incapable of any valid application" (*Steffel v Thompson,* 415 US 452, 474) does not answer the complaint of these plaintiffs, who have not offered for sale single-use items during the entirety of this lawsuit.[9] ¶ Rather, without question, the standards for assessing the vagueness of a law are violated under any set of facts applicable to these plaintiffs. Accordingly, the act is unconstitutional as applied, and enforcement against plaintiffs should be enjoined. ¶ In arriving at this conclusion I have been guided by the United States Supreme Court's decision in *Grayned v City of Rockford* (408 US 104, 108-109), where the proper guidelines were succinctly stated:[10] "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Footnotes omitted.) ¶ The act before us fails both of these tests. First, because its definitions of "drug-related paraphernalia" are so general, they do not give plaintiffs a "reasonable opportunity" of determining which multiuse items they may stock and sell and which are prohibited. And since the eight categories are clearly meant to include multiuse objects, we may not judicially interpret the listing as limited to "single-use" items without doing violence to the very thing we would thereby save. "The invalid part may be severed from the remainder if, after the severance, the remaining portions are sufficient to effect the legislative purpose deducible from the entire act." (McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd d.) As defendants concede, the act makes no distinction between single and multiuse items, and the Legislature plainly sought to reach both categories (cf. Assembly Debate on "Head Shop" Bill, June 14, 1980, pp 10,544-10,562) without incorporating a "saving" or "separability" clause. We may not presume "that the Legislature intended the act to be divisible." (McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd d; cf. *People v Kearse,* 56 Misc 2d 586, app dsmd 58 Misc 2d 277; see, also, *Urowsky v Board of Regents,* 76 Misc 2d 187, affd 46 AD2d 974, affd 38 NY2d 364; *Matter of*

---

**9.** Thus is this lawsuit distinguished from the discontinued Federal litigation (*Franza v Carey,* 518 F Supp 324, *supra;* and cf. 115 Misc 2d 882, 885, *supra*) where the "core meaning" analysis of the Second Circuit (*Brache v County of Westchester,* 658 F2d, at p 52) was relied upon. (But see 658 F2d, at p 52, n 7.)

**10.** Also quoted in full in the *Flipside* decision, 455 US, at p 498.

*Montgomery Ward & Co. v New York State Dept. of Motor Vehicles,* 90 AD2d 643.) ¶ Of course, it is not in the definitional section (§ 850) that we are informed of the elements of a violation, yet an examination of section 851 is fraught with even greater uncertainty. What exactly is prohibited? Although the legislative sponsor stated in debate (*op. cit.*) that the target was "head-shop" proprietors, the inartfulness of section 851's language leaves open the possibility that mere possession or purchasing is likewise prohibited, independent of the *scienter* requirement clearly applicable to purveyors of such merchandise. (Cf. *Hoffman Estates v Flipside, Hoffman Estates, supra,* at p 499: "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." [Footnote omitted].) ¶ Logically, all of this is bound up with the nature of the larger defect of the statute and the second prong of the vagueness test — the delegation of "basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." (*Grayned v City of Rockford, supra,* p 109.) Such is certainly the case here, and the legislative history makes plain the statute was purposely designed this way. One of the act's sponsors, when questioned about the possible harassment of innocent merchants, stated: "As much as you are concerned about harassment that might incur from some of the local agencies that are going to be called upon to prosecute for violations, I am more concerned about the harassment and about the problems that these 'head shops' have caused to the young people, and I will say this to you: There has to be a weighing and balancing of the equities for the possibilities that you set forth. It could happen. I would like to think that the Corporation Counsel of the City of New York and other enforcement agencies that fall within the provisions of this bill would be a little more selective, and if they violated it they could be subjected for malicious prosecution and for penalties that could be incurred for that kind of prosecution, but I say to you that if I had a choice of weighing the two, I would go with the provisions of this bill, because I think that the danger to our young people far outweighs the harassment that could fall on the shoulders of those who would be prosecuted under the provisions of this bill." (Assembly Debate, *op. cit.,* at p 10,545.) ¶ Thus, while the United States Supreme Court may have "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe", this statute provides no mechanism or standards by which the "regulated enterprise may * * * clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." (*Hoffman Estates v Flipside, Hoffman Estates, supra,* at pp 498-499 [footnotes omitted].)[11] The court below implicitly recognized this defect when it continued the preliminary injunction and directed a trial as to "[w]hether article 39 can constitutionally be applied to the sale of the particular multiuse items sold by plaintiffs" (115 Misc 2d, at p 891). ¶ The majority sidesteps this issue when it relies upon a decision from the New Jersey Supreme Court in concluding that the New York act "reasonably construed * * * require[s] a showing that a retailer has reason

11. As the District Court noted (*Franza v Carey,* 518 F Supp, at p 338, n 20): "Even when the definition of drug paraphernalia incorporates such a scienter requirement [restricting constitutional application of the law to only those situations where defendant has knowledge of an intended illegal purpose], however, to prevent arbitrary enforcement the legislation must include objective enforcement guidelines by which enforcement officers can assess the subjective intent of the alleged violator. See *Hejira Corp. v MacFarlane* [660 F2d 1356]". See, also, *Connally v General Constr. Co.,* 269 US 385, 391: "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (Citations omitted.) *People v Scott,* 26 NY2d 286, 292-293.

from the circumstances to know, and in fact believes, that the buyer of drug paraphernalia intends to use it for a proscribed purpose. (Cf. *Town Tobacconist v Kimmelman* [94 NJ 85].)" However, the New Jersey statute at issue in *Town Tobacconist* was much more closely patterned after the Model Drug Paraphernalia Act drafted by the Drug Enforcement Agency of the United States Department of Justice. Thus, the New Jersey act (NJ Stats Ann, §§ 24:21-46 — 24:21-53) includes guidelines of specific criteria to employ "[i]n determining whether or not an object is drug paraphernalia". This is just as crucial a component as the majority's syntactical interpretation construing the act to require "in fact" belief on the part of the retailer that the object will be used illegally (i.e., a *scienter* requirement). Thus, I concur in the result of the majority to the extent this court's order vacates the direction to immediate trial, but for a wholly different reason. ¶ Lastly, I must make some mention of the perplexing provisions of subdivision 2 of section 852 in relation to subdivision 1 of that section and section 853, ostensibly the "Enforcement" provision. As noted earlier, the latter section empowers the State Attorney-General or appropriate local officials to institute an action for an injunction, with the direction to the court to assess, in substance, a fine of at least $1,000 for each violation, or as much as $10,000 per violation. This rather creative hybrid of the injunctive process, standing alone, would brook no constitutional challenge. Likewise, the provision in subdivision 1 of section 852 for a further penalty of license revocation by the locality which issued such merchandising permit(s) affords due process by its requirement that a hearing be first had to establish the fact of violation. ¶ These two provisions stand in sharp contrast to subdivision 2 of section 852, which states in pertinent part: "2. The possession with intent to sell or offering for sale of drug-related paraphernalia as defined herein is hereby declared to be a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken". ¶ As plaintiffs complain, this subdivision implicitly authorizes warrantless seizures without any opportunity, pre or post, for a hearing on notice. Add to this the authorization for summary forfeiture and the insult to the Constitution is complete. ¶ This is not only excessive and unnecessary to the accomplishment of the act's stated goal — to stop the sale of these items — it is also unconstitutional. Deprivation and destruction of private property by government officials, without a hearing of any kind, deny the owner of due process in violation of both State and Federal Constitutions. (Cf. *Pennoyer v Neff,* 95 US 714; *Goldberg v Kelly,* 397 US 254; *Matter of Economico v Village of Pelham,* 50 NY2d 120.) While certainly the police power of the State "is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance" (*Lawton v Steele,* 152 US 133, 136), the State police power is subject to constitutional limitations (*Mugler v Kansas,* 123 US 623), and the burden is on the State to show the emergency or other necessity for such unilateral action. (*North Amer. Stor. Co. v Chicago,* 211 US 306.) Especially do I find this so in the context of this civil prohibition, founded upon a *scienter* element requiring the offending merchant to be aware of a customer's intent to use an object illegally. (Cf. *Peisch v Ware,* 4 Cranch [8 US] 347, 365 [per Marshall, Ch. J.], "the law is not understood to forfeit the property of owners or consignees, on account of the misconduct of mere strangers, over whom such owners or consignees could have no control.") Whatever "emergency" could possibly be conceived to exist is surely taken away by the availability of an injunction. (Cf. General Business Law, § 853.) ¶ The court below "saved" this section by reading in requirements for a warrant and a hearing prior to forfeiture. We

cannot adopt such an approach in light of the general proscription against judicial legislation, and, more importantly, because neither seizure nor forfeiture is at all essential to the act's goal of prohibiting the trade in these items. On this point I am in full agreement with the majority. ¶ Accordingly, the order entered August 24, 1982 in Supreme Court, New York County (Eve Preminger, J.), should be reversed, a declaration of the unconstitutionality of article 39 made in plaintiffs' favor, and a permanent injunction granted against enforcement of the statute against them, all without costs.

## APPENDIX

## GENERAL BUSINESS LAW

## ARTICLE 39 — DRUG-RELATED PARAPHERNALIA [NEW]

Section

850. Definitions.
851. Possession and sale of drug-related paraphernalia.
852. Power of municipality to revoke license or permit.
853. Enforcement.

1980 Amendment. Section analysis, L. 1980, c. 812, § 1, eff. on the 30th day after June 30, 1980, in section 851 catchline substituted "Possession and sale" for "Sale".

### § 850. Definitions

As used in this article, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:

1. "Controlled substance" shall have the same meaning as defined in section three thousand three hundred two of the public health law.

2. "Drug-related paraphernalia" consists of the following objects used for the following purposes:

(a) Kits, used or designed for the purpose of planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(b) Kits, used or designed for the purpose of manufacturing, compounding, converting, producing, or preparing controlled substances;

(c) Isomerization devices, used or designed for the purpose of increasing the potency of any species of plant which is a controlled substance;

(d) Scales and balances, used or designed for the purpose of weighing or measuring controlled substances;

(e) Dilutents and adulterants, including but not limited to quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or designed for the purpose of cutting controlled substances;

(f) Separation gins, used or designed for the purpose of removing twigs and seeds in order to clean or refine marihuana;

(g) Hypodermic syringes, needles and other objects, used or designed for the purpose of parenterally injecting controlled substances into the human body;

(h) Objects, used or designed for the purpose of ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body.

Added L. 1980, c. 811, § 2; amended L. 1980, c. 812, § 1.

§ 851. Possession and sale of drug-related paraphernalia

It shall be a violation of this article for any person, firm or corporation to possess with intent to sell, offer for sale, or purchase drug-related paraphernalia under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes stated in subdivision two of section eight hundred fifty of this article.

Added L. 1980, c. 811, § 2.

§ 852. Power of municipality to revoke license or permit

1. A county, town, city or village which issues a license or permit authorizing any person, firm or corporation to engage in the selling or offering for sale of any merchandise may revoke such license or permit upon a finding, pursuant to a hearing held thereon, that such person, firm or corporation has sold or offered for sale merchandise in violation of this article.

2. The possession with intent to sell or offering for sale of drug-related paraphernalia as defined herein is hereby declared to be a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken, except that in a city having a population of seventy-five thousand or more, the same shall be surrendered and forfeited to the police commissioner or other head of the police force or department of said city and except that in the counties of Nassau and Suffolk, the same shall be surrendered and forfeited to the commissioner of the county police department.

Added L. 1980, c. 811, § 2; amended L. 1980, c. 812, § 1.

§ 853. Enforcement

The attorney general or any state or local health officer, town, village or city attorney, or the chief executive officer of a municipality may institute an action in a court of competent jurisdiction to enjoin any activity prohibited pursuant to section eight hundred fifty-one of this chapter. If such court finds that any person, firm or corporation has sold or offered for sale any drug-related paraphernalia, it shall assess civil penalties against such person, firm or corporation in an amount not less than one thousand dollars nor more than ten thousand dollars for each such violation.

Added L. 1980, c. 811, § 2; amended L. 1980, c. 812, § 1.