POPULATION SERVICES INTERNA-TIONAL et al., Plaintiffs,

v.

Malcolm WILSON, Individually and as Governor of the State of New York, et al., Defendants.

No. 74 Civ. 1572.

United States District Court, S. D. New York.

July 2, 1975.

Karpatkin, Pollet & Le Moult, by Michael N. Pollet, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., by Arlene R. Silverman, New York City, for defendants.

American Civil Liberties Union, by Rena K. Uviller and Judith Mears, New York City, amicus curiae.

Greenbaum, Wolff & Ernst, by Harriet F. Pilpel, Nancy F. Wechsler, and Eve W. Paul, New York City, for amicus curiae Planned Parenthood of New York City, Inc.

Before FRIENDLY, Circuit Judge, and PIERCE and CONNER, District Judges.

PIERCE, District Judge.

## OPINION

Plaintiffs have brought this action seeking declaratory and injunctive relief against enforcement of Section 6811(8) of the New York State Education Law, McKinney's Consol.Laws, c. 16, insofar as that section applies to non-prescription contraceptives.[1] Plaintiffs claim that as applied to the aforesaid items, the statute violates the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution. Specifically, the plaintiffs claim, *inter alia*, that the statute violates the constitutional right of privacy of New York State residents, which embraces a right to obtain non-prescription contraceptives, and that it restricts the First Amendment right of New York State residents to receive information concerning such products, as well as the plaintiffs' own right to dispense such information.[2] The action is brought under 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343(3).

Following oral argument before the Court, plaintiffs moved for summary judgment, pursuant to Rule 56 Fed.R. Civ.P., claiming that there is no genuine issue of material fact to be tried and that they are entitled to judgment as a matter of law. Defendants oppose the motion for summary judgment and have moved to dismiss the complaint.

The challenged statute reads as follows:

"It shall be a class A misdemeanor for:

\* \* \* \* \* \*

8. Any person to sell or distribute any instrument or article, or any recipe, drug or medicine for the prevention of conception to a minor under the age of sixteen years; the sale or distribution of such to a person other than a minor under the age of sixteen years is authorized only by a licensed pharmacist but the advertisement or display of said articles, within or without the premises of such pharmacy is hereby prohibited;" N.Y. Educ. Law § 6811(8) (McKinney 1972).

Plaintiffs seek relief against each of the three provisions of the statute.

### I

Plaintiffs in this action are:

1. *Population Planning Associates, Inc. [PPA].* PPA is alleged to be a North Carolina corporation which maintains an office in the County, City, and State of New York. The supplemental complaint alleges that PPA is primarily engaged in the retail sale of non-medical contraceptive devices through the United States mails; that it publishes advertisements containing order forms for its products in national periodicals entering New York State and occasionally places

---

1. Because plaintiffs seek to enjoin the enforcement of a State statute on the ground that it is unconstitutional, a three-judge district court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 to hear the case. See *Population Services International, Inc., et al. v. Wilson, et al.,* 383 F.Supp. 543 (S.D.N.Y.1974).

2. Plaintiffs have advanced a number of other constitutional claims including the assertion that the subject statute violates their rights under the Due Process Clause to engage in their respective professions and businesses. Because this action is determined on other grounds, these arguments need not be addressed.

such advertisements in periodicals published and circulated in New York State; that it approves and fills orders for its products, including orders from New York State residents, at its North Carolina office; and that PPA also mails contraceptive devices to New York State residents from that office.

2. *Population Services International* [*PSI*]. Plaintiff PSI is alleged to be a North Carolina non-profit corporation with an office in the County, City, and State of New York. Its primary objectives are alleged to be discovering and implementing new methods of conveying birth control information and services to persons who do not now receive them, with the ultimate goal of reducing fertility, unwanted pregnancy, and population growth. Its activities, some of which are said to be performed within the State of New York, include development, test marketing, advertising and

3. *The Reverend James B. Hagen* [*Hagen*]. Plaintiff Hagen is alleged to be an ordained minister of the Protestant Episcopal Church and Rector of a church in Brooklyn, New York. The supplemental complaint alleges that he is also coordinator of the Sunset Action Group Against V.D., which sponsors a program in which male contraceptive devices are sold and distributed to persons who are both over and under the age of sixteen, both at the church in Brooklyn, New York, and at a local retail outlet

4. *Dr. Anna T. Rand, Dr. Edward Elkin, and Dr. Charles Arnold.* Doctors Rand, Elkin, and Arnold are alleged to by physicians active in family planning, pediatrics, and obstretics-gynecology. It is alleged that they treat sexually active adolescents both over and under the age of sixteen and that they advocate the distribution of non-medical contraceptives through non-pharmacy outlets.

5. *John Doe.* John Doe is alleged to be an adult male resident of New York whose access to contraceptive products and information about them and whose freedom to distribute the same to his minor children under the age of sixteen are allegedly inhibited by the operation

In connection with its above-described activities, plaintiff PPA has received three communications from the defendant Board of Pharmacy of the State of New York [Board] and defendant Albert J. Sica [Sica], the Board's Executive Director. The first, a letter dated December 1, 1971, informed PPA that its advertisement in a New York State college newspaper, which was alleged to have "solicited the sale of condoms to students", was in violation of the statute challenged here. The letter advised PPA of the three provisions of § 6811(8) and sought "future compliance with [the] law." The second, a letter dated February 23, 1973, asserted that PPA's offer to sell contraceptives for men through magazine ads was in violation of the subject law. After urging compliance with the law, the letter stated: "In the event you fail to comply, the matter will be referred to our Attorney General for legal action." The third, dated September 4, 1974, was a copy of a report made to the Board by its inspectors following a visit to PPA's New York office.[3] The report noted, *inter alia*, that PPA advertises male contraceptives. It indicated further that Philip D. Harvey, President of PPA, had been advised to stop selling contraceptives as it is a violation of the New York State Education Law for PPA to do so. Defendants deny that the inspectors directly threatened prosecution. But, it is undisputed that the inspectors said they would report the facts concerning PPA's alleged violation of the law to the Board of Pharmacy.

The defendants in this action are the Governor and Attorney General of the State of New York, the Executive Secretary of the Board of Pharmacy of the State of New York, and the Board of

---

3. The copy of this report annexed to the supplemental complaint is in some part unreadable. However, a readable copy appears annexed to plaintiffs' notice of motion for leave to serve the supplemental complaint.

Pharmacy itself.[4] These defendants challenge the right of any of the plaintiffs to bring the instant suit. Defendants claim that none of the plaintiffs has standing to challenge the statute at issue and that no case or controversy is presented to the Court for resolution. These claims will be considered in the first instance insofar as they relate to plaintiffs, PPA and Hagen.

The initial question to be decided is whether plaintiffs PPA and Hagen have such a "personal stake in the outcome of the controversy" that there exists the "concrete adverseness" which courts require in considering issues presented for decision. See *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ There can be no question that the statute at issue interferes with New York State residents' access to non-prescription contraceptives and that it prohibits certain dissemination of information about them. There is equally no question that whatever constitutional privacy right there may be to have access to such contraceptives, it is not a right that these two plaintiffs are asserting on their own behalf. Under certain circumstances, however, it is well established that plaintiffs may represent the constitutional rights of persons not before the court. See *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L. Ed.2d 1488 (1958); *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). The Supreme Court has found this doctrine applicable in several cases involving the right of privacy. See *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The *Eisenstadt* decision is particularly instructive with respect to the present action.

In *Eisenstadt*, the plaintiff Baird, an advocate of the use of contraceptives who had been convicted for illegally distributing a non-prescription contraceptive product, sought to challenge his conviction on the ground that the State statute under which he was convicted violated the right of single persons to obtain contraceptives. The defendants in that case challenged his standing because he was not a single person unable to obtain contraceptives. See *Eisenstadt v. Baird, supra*, 405 U.S. at 443, 92 S.Ct. 1029. The Court found the case an appropriate one for relaxing the usual rule against third-party standing. It allowed Baird to represent the rights of unmarried persons denied access to contraceptives, even though he was not such a person himself and had no professional relationship with such persons.

In upholding Baird's standing, the Court stated that:

"[T]he relationship between Baird and those whose rights he seeks to assert is not simply that between a distributor and potential distributees, but that between *an advocate of the rights of persons to obtain contraceptives* and those desirous of doing so." *Id.* 405 U.S. at 445, 92 S.Ct. at 1034. (emphasis added).

The Court went on:

"[M]ore important than the nature of the relationship between the litigant and those whose rights he seeks to assert is the impact of the litigation on third-party interests. * * * Enforcement of the [challenged] statute will materially impair the ability of single persons to obtain contracep-

---

4. Among the affirmative defenses asserted by the defendants is the claim that the Board of Pharmacy is not a "person" who can be sued under the statutes under which plaintiffs have asserted jurisdiction. This defense raises difficult questions which the Court declines to address in view of the fact that their determination will make no practical difference in the effectiveness of the relief granted to plaintiffs.

Defendants' other affirmative defenses, to the extent that they are not discussed in this opinion, have been considered and found to be without merit.

tives." *Id.* 405 U.S. at 445–46, 92 S. Ct. at 1035.

Like Baird, plaintiffs PPA and Hagen are advocates of the privacy rights of those they seek to represent. They advocate the increased availability of non-prescription contraceptives to those whose ability to obtain them is impaired by § 6811(8). While such an advocacy role, standing alone, might not confer on these plaintiffs the right to represent the interests of third-parties, see *Tileston v. Ullman,* 381 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943), this role, combined with other factors which were also present in *Eisenstadt,* leads this Court to conclude that third-party representation is appropriate in this case. As was true in *Eisenstadt,* the statute challenged here prohibits not use, but distribution of contraceptive products. If distributors such as PPA and Hagen are barred from asserting the privacy rights of persons whose access to these products is impaired, this statute might well be immune from attack. Individual users would present no controversy since they cannot be prosecuted under the statute. Sellers and distributors would have no standing because they have no privacy rights. The Court is loath to permit such a result.

Of perhaps even greater importance is the fact that, as the following analysis will show, the Court is satisfied that these plaintiffs have an adequate incentive to assert vigorously the rights of those they seek to represent. Defendants argue that because there have been no prosecutions under § 6811(8) these plaintiffs present no case or controversy, as required by Article III of the Constitution, and this case should be controlled by *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). There the Supreme Court dismissed appeals challenging certain Connecticut statutes which prohibited the use of contraceptive devices and the giving of medical advice relative to their use. The Court found that where the State had virtually never enforced the statute,[5] the plaintiffs' purported fear of prosecution was "chimerical" and no case or controversy was presented. See *Id.* 367 U.S. at 508, 81 S.Ct. 1752.

The statute at issue here can hardly be characterized as moribund, however. While the parties have cited no prosecutions under § 6811(8) itself, there were several prosecutions under its predecessor statute, § 1142 of the Penal Law, the latest occurring in 1965.[6] Various bills seeking to amend or repeal the section have been debated and defeated, leaving no doubt that the Legislature has not lost interest in its provisions.[7] And the notices to PPA evidence the continuing concern of the State Board of Pharmacy in achieving compliance with the law. This case is therefore much closer to *Doe v. Bolton, supra,* where the Court found the requisite controversy present with respect to the plaintiff doctors, despite the fact that the record contained no showing that any one of them had been prosecuted or even threatened with prosecution under the abortion statute at issue there. See *Id.* 410 U.S. at 188, 93 S.Ct. 739. See also *Epperson v. Ar-*

---

5. The statutes challenged in *Poe v. Ullman, supra,* had been enacted in 1879. They had been put in issue only once, in 1940, when a State appellate court had upheld their validity on appeal from a demurrer to an information. After that ruling the State had moved to dismiss the information. See *id.* 367 U.S. at 501–02, 81 S.Ct. 1752.

6. See *People v. Baird,* 47 Misc.2d 478, 262 N.Y.S.2d 947 (Sup.Ct.Nas.Co.1965) ; *People v. Sanger,* 222 N.Y. 192, 118 N.E. 637 (1918), *appeal dismissed,* 251 U.S. 537, 40

S.Ct. 55, 64 L.Ed. 403 (1919) ; *People v. Byrne,* 99 Misc. 1, 163 N.Y.S. 682 (Sup.Ct. Kings Co.1917).

7. In 1972, a bill to amend § 6811(8), S2181B, reached the floor of the New York State Senate, was debated, and was defeated. In April 1973, a bill that would have permitted contraceptives to be displayed in pharmacies, A6843B, was also debated and defeated. A similar bill was again defeated in 1974.

*kansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L. Ed.2d 228 (1968). Further, the Supreme Court has recently noted that,

> "[A] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the [federal] plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974).

This observation is no less compelling when applied to a plaintiff properly asserting third-party interests.

■ In sum, because of the combination of factors present in this case—(1) the fact that only sellers and distributors, e. g., PPA and Hagen, are subject to the prohibitions of the challenged statute, (2) the fact that as those against whom this statute operates directly these plaintiffs present a genuine controversy, and (3) the role of these parties as advocates of the rights of others—this Court finds that plaintiffs PPA and Hagen have standing to assert the rights of those New York State residents whose access to non-prescription contraceptives is impaired by § 6811(8).

■■ In addition to claiming that § 6811(8) infringes on the constitutional right of privacy, plaintiffs claim that the statute's total prohibition of any advertisement and display violates the First Amendment. The Court finds that both PPA and Hagen also have standing to represent the First Amendment rights of New York State residents who are potential recipients of information these plaintiffs might seek to disseminate. See *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *New York Times Co. v. United States,* 403 U.S. 713, 749, 91 S. Ct. 2140, 29 L.Ed.2d 822 (1970) (Burger, C. J., dissenting); cf. *Gajon Bar & Grill v. Kelly,* 508 F.2d 1317 (2d Cir. 1974). Further, Hagen, as an individual, clearly has standing to challenge this provision's effect on his own First Amendment rights. See *Eisenstadt v. Baird, supra,* 405 U.S. at 457, 92 S.Ct. 1029 (Douglas, J., concurring); *Griswold v. Connecticut, supra,* 381 U.S. at 482, 85 S.Ct. 1678.

■ Defendants challenge the standing of Doctors Rand, Elkin, and Charles on quite a different ground. They claim that New York State law exempts physicians from the prohibitions of § 6811(8) and that as a result, these plaintiffs present no controversy with respect to the statute and have no standing in this case. This interpretation of the State statutory scheme, supported by *amicus curiae* Planned Parenthood of New York City, Inc. and vigorously disputed by plaintiffs, rests on unsettled questions of New York State law.[8] In view of the

---

8. The starting point for defendants' contention is § 6807(b) of the State Education Law which states in part:
 "This article shall not be construed to affect or prevent:
 \* \* \* \* \*
 (b) Any physician . . . who is not the owner of a pharmacy, or registered store, or who is not in the employ of such owner, from supplying his patients with such drugs as the physician . . . deems proper in connection with his practice . . . ."
 N.Y.Educ.Law § 6807(b) (McKinney 1972). The defendants then argue that non-prescription contraceptives fall with the statutory definition of drugs. The definitional section of the Article provides in part:

" 'Drugs' means:
 \* \* \* \* \*
 (b) Articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or animals.
 (c) Articles (other than food) intended to affect the structure or any function of the body of man or animals." N.Y.Educ.Law § 6802(7)(b), (c) (McKinney 1972).
The parties have cited no interpretations of these two statutory provisions relating to their applicability to non-prescription contraceptives and the Court has found none. However, the Court has little difficulty in concluding that non-prescription contraceptives fall within the definitions of the term "Drug" set forth in the statute.

Court's conclusion that PPA and Hagen have standing to challenge all provisions of the statute, these questions relating to the doctors' standing need not be decided. However, to the extent that the question bears on other aspects of this case, the Court will treat the issues as if it were established—as it is said to be by the Assistant Attorney General of the State of New York—that physicians may distribute non-prescription contraceptives to their patients, regardless of age. Therefore, all references in this opinion to the "pharmacists only" provision of the statute should be read as incorporating this assumption.

The conclusion that some plaintiffs have standing likewise makes it unnecessary to address the defendants' contention that before John Doe may be accorded standing he must be required to identify himself and demonstrate that he in fact suffers the deprivations claimed. Nor is it necessary to determine whether standing might be extended to PSI, whose present or contemplated involvement in the retail sale of non-prescription contraceptives is not apparent on the face of the record.

## II

Having found that there are persons before the Court with standing to challenge the three provisions of § 6811(8), we turn to the merits of the action. The plaintiffs' central charge against § 6811(8) is that it infringes the right of New York State residents to have access to non-prescription contraceptive devices. Plaintiffs contend this right is embraced by the constitutional right of privacy as that right has been developed in a line of Supreme Court decisions spanning the last decade.

The constitutional right of privacy was first recognized in *Griswold v. Connecticut, supra.* Although the Court did not specify the precise source of this "right", indicating only that it emanated from the "penumbras" of specific guarantees of the Bill of Rights, *Id.* 381 U.S.

at 485, 85 S.Ct. 1678, it there held that because of this right the State of Connecticut could not constitutionally bar married persons from using contraceptives. See *Id.* 381 U.S. at 485, 85 S.Ct. 1678. In *Eisenstadt v. Baird, supra,* the Court went further and stated that,

"If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether or not to bear or beget a child." *Id.* 405 U.S. at 453, 92 S.Ct. at 1039.

Without deciding the "important question" of what, if any, constitutional protection was to be accorded the right of access to contraceptives, the Court concluded that a State statute which distinguished between married and unmarried persons with respect to this right violated the Equal Protection Clause of the Fourteenth Amendment. See *Id.* 405 U. S. at 454–55, 92 S.Ct. 1029.

In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) the Court recognized that the right of privacy encompassed a woman's decision whether or not to terminate her pregnancy. The Court held that while this right was not absolute, the right to make this decision was "fundamental" and could be infringed only in furtherance of a "compelling" State interest. See *id.* 410 U.S. at 154–55, 162–63, 93 S.Ct. 705. Finally in *Doe v. Bolton, supra,* while again noting that the "fundamental" right of a woman to terminate her pregnancy was not absolute, the Court invalidated as unconstitutional several restrictions on the exercise of that right. See *id.* 410 U.S. at 192–200, 93 S.Ct. 739.

The reach of the constitutional right of privacy has yet to be determined. However, as noted by the Court of Appeals for this Circuit, the Supreme Court's privacy decisions have made it clear that protection extends to " 'the most intimate phases of personal life' having to do with sexual intercourse and its possible consequences." *Roe v. In-*

*graham,* 480 F.2d 102, 107 (2d Cir. 1973).

█ There has been some suggestion that the Supreme Court's references to *Eisenstadt v. Baird, supra,* in later cases, see, e. g., *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65, 93 S.Ct. 2607, 37 L.Ed.2d 446 (1973); *Roe v. Wade, supra,* 410 U.S. at 152–53; *Id.* at 213, 93 S.Ct. 705 (Douglas, J., concurring), has been such as to indicate a view by the Court that that case recognized an implied extension of the right of privacy to cover access to contraceptives. See, Note, *On Privacy: Constitutional Protection for Personal Liberty,* 48 N.Y.U. L.Rev. 670, 706 n. 221 (1973) [Note, *On Privacy*]. Whether the Court's opinion in *Eisenstadt* should now be read together with Griswold as having recognized such a right, or, as we think, only as having forecast its recognition, see *Roe v. Ingraham, supra,* at 107, this Court has no doubt that access to contraceptives is an aspect of the right of privacy, that is, a right encompassed within the personal liberty protected by the Due Process Clause of the Fourteenth Amendment. See *Cleveland Board of Education v. LaFleur,* 414 U.S. 632 639–40, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Roe v. Wade, supra,* 410 U.S. at 153; *Id.* at 169–70, 93 S.Ct. 705 (Stewart, J., concurring); *Griswold v. Connecticut, supra,* 381 U.S. at 500, 85 S.Ct. 1678 (Harlan, J., concurring); *Poe v. Ullman, supra,* 367 U.S. at 542–45, 81 S. Ct. 1752 (Harlan, J., dissenting from dismissal of appeal).

It is evident that each of the provisions of § 6811(8) burdens the exercise of the right this Court has found to be constitutionally protected. The Due Process Clause requires, therefore, that the Court carefully scrutinize each provision of the statute to determine whether, as drafted, it is in fact sufficiently related to a legitimate State interest to justify its infringement of the right at stake. Cf. *Boraas v. Village of Belle Terre,* 476 F.2d 806, 814–15 (2d Cir.

1973), *rev'd on other grounds,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). It is only if the answer to this inquiry is in the affirmative that the Court need consider whether this particular aspect of the right of privacy is "fundamental", requiring a "compelling" state interest to justify its abridgment.

## PROHIBITION OF SALE OR DISTRIBUTION TO MINORS UNDER SIXTEEN

██ The starting point in considering the statute's ban on sale or distribution of non-prescription contraceptives to minors under the age of sixteen years is the principle, recently reaffirmed by the Supreme Court, that persons are not excepted from the protections of the Constitution merely because they are minors. See *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Tinker v. Des Moines Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731 (1969); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). While no Supreme Court decision has explicitly held that the right of privacy extends to minor persons, a growing number of lower courts have done so. See, e. g., *Foe v. Vanderhoof,* 389 F.Supp. 947 (D.C.Colo.1973); *Coe v. Gerstein,* 376 F.Supp. 695 (S.D.Fla.1973), *appeal dismissed,* 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974); *Merriken v. Cressman,* 364 F.Supp. 913 (E.D.Pa. 1973); *In re P. J.,* 12 Crim.L.Rep. 2549 (D.C.Super.Ct. Feb. 6, 1973); *Washington v. Koome,* 530 P.2d 260 (Wash.1975). See also Note, *Parental Consent Requirements and Privacy Rights of Minors: The Contraceptive Controversy,* 88 Harv.L.Rev. 1001, 1011 n. 7 (1975) [Note, *Parental Consent*] and cases cited therein. This Court rejects at the outset any suggestion that the privacy right at issue here, i. e., access to non-prescription contraceptives, is necessarily inapplicable to minor persons under the age of sixteen.

In support of this provision of the statute, the defendants assert that the State has an interest in promoting the morality of its young people by seeking to discourage promiscuity and extramarital sexual intercourse by persons under the age of sixteen. Pursuit of this goal, they argue, is a legitimate exercise of the State's police power, aimed at protecting the health and welfare of its citizens. Were contraceptives made available to minors under the age of sixteen, the argument continues, the State would seem to be sanctioning sexual activity by its young persons and thereby encouraging promiscuity. Therefore, the defendants conclude, New York has reasonably attempted to further its policy goals by limiting the sale and distribution of non-prescription contraceptives to minors under the age of sixteen to licensed physicians.

The extent to which a State may legislate to regulate private morals and private sexual conduct is a difficult question,[9] but one which need not be determined by this Court. For the purposes of this opinion, the Court assumes that issues relating to sexual intercourse by minors below a certain age are matters with which the State may legitimately be concerned. However, as the following analysis will show, this Court is unable to conclude that the legislation at issue here is substantially related to achieving the State's asserted purposes.

We note first that the defendants themselves have stated that "there is no evidence that teenage extramartial sexual activity increases in proportion to the availability of contraceptives . . . ." [10] The State contends, however, relying by way of analogy on decisions dealing with regulation of obscenity, that unless such a result is explicitly disproved it is not irrational or impermissible for the Legislature to restrict minors' access to contraceptives in the hope of limiting their sexual activity. See, e. g., Paris Adult Theatre I v. Slaton, supra, 413 U.S. at 60–61, 93 S. Ct. 2607; Ginsberg v. New York, 390 U.S. 629, 642–43, 88 S.Ct. 1274, 20 L. Ed.2d 195 (1968).

There are, however, important distinctions between the instant case and those cases dealing with obscenity regulation. First, obscenity does not enjoy constitutional protection. See Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Thus, in conceding the State's power to regulate it on the basis of unproved or unprovable assumptions, the Supreme Court was not considering an exercise of State power which infringed constitutionally protected rights such as the right of privacy involved here.[11]

Second, in the obscenity area, there has been no serious argument that the opposite policy, i. e., promoting the availability of the regulated material, would serve a positive end for the potential recipients or for the State. However, just such an argument can be advanced persuasively in this case.

To begin with, it is not beyond the power of this Court to note that some young persons under the age of sixteen, including some in New York State do engage in sexual intercourse [12] and that the consequence of such activi-

9. See Note, On Privacy, supra, at 719–38 and materials cited therein.

10. See Defendants' Memorandum of Law (August 1, 1974) at 23. Others have reached the same conclusion on this subject. See, e. g., Note, A Minor's Right to Contraceptives, 7 U.Cal. Davis L.Rev. 270, 273 (1974), citing Pilpel & Wechsler, Birth Control, Teenagers and the Law: A New Look 1971, 3 Family Planning Perspectives 37 (1971).

11. Unprovable but "rational" assumptions also "underlie much lawful state regulation of commercial and business affairs [citations omitted]." Paris Adult Theatre I v. Slaton, supra, 413 U.S. at 61, 93 S.Ct. at 2637.

12. See generally Hoise and Goldsmith, Planned Parenthood Services for the Young Teenager, 4 Family Planning Perspectives 27 (1972); Kantner and Zelnik, Contraception and Pregnancy: Experience of Young Unmarried Women in the United States, 5 Family Planning Perspectives 21 (1973).

ty is often venereal disease, unwanted pregnancy, or both.[13] The State Legislature has acknowledged as much—as least by implication—by enacting statutes which do allow minors to obtain contraceptives under many circumstances[14] and permit them to consent to medical treatment relating to venereal disease or pregnancy without the consent of a parent, guardian, or any other person.[15] Nor is the Court precluded from noting the substantial documentation, cited to the Court by plaintiffs and *amicus curiae*, of the dangers of venereal disease and pregnancy for young persons and of the substantial burdens which unwanted pregnancy and childbirth may place on young parents, on their children and on society itself.[16]

The defendants have cited no authority to contest the existence or severity of these realities. Nor have they challenged the view that when sexual intercourse takes place, venereal disease and pregnancy are more likely to occur when contraceptives are not used. This Court concludes that where, as here, there is substantial evidence that harm may result from enforcement of particular legislation and that positive benefits may result from reversing that policy, and where the legislation in question burdens the exercise of a constitutionally protected right, it is not sufficient for the State to support its claim that the statute furthers some other legislative aim merely by asserting that the plaintiffs have not disproved that claim. See *Paris Adult Theatre I v. Slaton, supra,* 413 U.S. at 60, 93 S.Ct. 2607. Cf. *Eisenstadt v. Baird, supra,* 405 U.S. at

463–64, 92 S.Ct. 1029 (White, J., concurring).

A second factor which casts significant doubt on the relationship between § 6811(8) and the purported State interest of deterring sexual activity by minors under sixteen is the existence of substantial statutory exceptions to the provision prohibiting distribution of contraceptives to those persons. In fact, not only does New York State law allow non-prescription contraceptives to be made available to some persons under the age of sixteen, under some circumstances the law mandates that this be done.

In this regard, the Court notes that in 1973 the New York State Legislature enacted into law Section 350(1)(e) of the New York Social Services Law, McKinney's Consol.Laws, c. 55. As amended in 1974, this section, which implements the federal program of aid to needy families with dependent children [AFDC],[17] provides that "family planning services and supplies *shall be offered and promptly furnished to eligible persons of childbearing age, including children who can be considered sexually active,* who desire such services and supplies . . ." (emphasis added). This State statute has no age requirement. The only factors required to trigger the State's affirmative obligation to provide family planning services and supplies are that the child be sexually active, desire the services and supplies, and be eligible for the program. In addition, the New York State program for Medical Assistance for Needy Persons, again by way of implementing a federal

---

13. See Mencken, *The Health and Social Consequences of Teenage Childbearing,* 4 Family Planning Perspectives 45 (1972).

14. See infra at 333–334.

15. Any person including those under sixteen may be treated for venereal disease without the consent or knowledge of the person's parents or guardian. See N.Y.Pub.Health Law § 2305 (McKinney's Consol.Laws, c. 45, Supp.1972). Any person under sixteen who is the parent of a child may consent to

any medical services for himself or herself, including services related to subsequent pregnancy. See N.Y.Pub.Health Law § 2504 (McKinney Supp.1972).

16. See Memorandum of Law of American Civil Liberties Union, *amicus curiae,* at 23–25; Plaintiff's Reply Memorandum (September 19, 1974) at 13–15.

17. See 42 U.S.C. § 602(a)(15)(A); 45 CFR § 220.21 Family Planning Services.

program,[18] requires that family planning services and supplies be furnished to children who can be considered sexually active, regardless of age, if these children desire the services and supplies and are eligible for the program.[19] And, assuming that any physician presently may distribute non-prescription contraceptives to patients under the age of sixteen, this is yet a third major exception to the purported statutory ban.[20]

Thus, it appears that under present New York State law, the ban on sale or distribution of non-prescription contraceptives is directed only at those persons under the age of sixteen who are not eligible for AFDC or Medicaid services or who do not seek access to a physician. Putting aside whatever Equal Protection claims might arise from such a statutory scheme, cf. *Eisenstadt v. Baird, supra,* the existence of such major exceptions to the ban under review here casts serious doubt on whether it can be viewed as substantially related to New York's purported goal of deterring sexual conduct by minors under the age of sixteen years.[21]

██ In sum, careful scrutiny of the subject statutory provision reveals that: (1) the State has cited no evidence whatever to the Court that sexual activity among young persons under the age of sixteen decreases as the availability of contraceptives is restricted; and (2)

the New York State Legislature already has created substantial exceptions to the prohibition on distribution of non-prescription contraceptives to those under sixteen. Given these factors, the Court must conclude that, even assuming that the State has a legitimate interest in seeking to deter sexual intercourse by minors under the age of sixteen, there is no substantial relationship between § 6811(8) and this purported interest. Under these circumstances, the provision of § 6811(8) prohibiting the sale or distribution of contraceptives to persons under the age of sixteen years is found to be in violation of the Fourteenth Amendment and must be ruled unconstitutional.

## PROHIBITION OF SALE OR DISTRIBUTION BY ANYONE OTHER THAN A LICENSED PHARMACIST

There is no doubt that by limiting the sale or distribution of non-prescription contraceptives to licensed pharmacists § 6811(8) restricts access to these products. To justify this restriction the defendants suggest two State interests.

The defendants argue first that the provision of the statute allowing only pharmacists to sell or distribute contraceptives is necessary to enable the State to police the statute's prohibitions of advertising and display and of sales to per-

---

18. See 42 U.S.C. § 1396 et seq.; *Id.* at § 1396d(a)(vii)(4)(C).

19. See New York Social Services Law § 365–a(3)(c) (McKinney Supp.1974).

20. The statutory scheme creates other anomalous situations. A female under the age of sixteen years may marry if proper consent is obtained. See N.Y.Dom.Rel.Law § 15(2)(3) (McKinney's Consol.Laws, c. 14, Supp.1974). However, § 6811(8) of the State Education Law contains no exception which would allow such a person to obtain contraceptives, even with parental consent.

21. It could be argued from the foregoing analysis that the aim of this statute is not to deter persons under sixteen from engaging in sexual intercourse, as the State's attorney contends, but rather to deter them

from using contraceptives. There is little doubt that if the Court were to conclude that deterring the use of contraceptives was in fact the sole purpose of the subject legislation, the statute would be vulnerable to attack under the Equal Protection Clause of the Fourteenth Amendment. The Court can perceive no fair and substantial basis for distinguishing between persons over and under the age of sixteen years with respect to the use of contraceptives. See *Eisenstadt v. Baird, supra,* 405 U.S. at 453–54, 92 S.Ct. 1029; *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Both are subject to at least the same risks of harm from venereal disease and unwanted pregnancies. We note that the State has not attempted to justify this provision as a health measure, perhaps in recognition of these realties.

sons under sixteen conveniently and effectively. In other words, it is said to be imposed as a means of implementing these other two provisions of the statute.

In considering this contention, we assume that the State may have legitimate interests in imposing some regulations on advertising and display of non-prescription contraceptives and in limiting, to some extent, the persons to whom such products may be sold. However, having made this assumption, the question remains whether facilitating administrative enforcement of these regulations is itself a State interest of sufficient magnitude to justify the limitation which it places on the right of access to non-prescription contraceptives, i.e., by making them available only from a licensed pharmacist or a physician. In other words, the question is whether the increased administrative burden of enforcement which defendants contend would result if these products were sold and distributed through other types of outlets is such that it justifies the present limitation on access.

■■■ Under a variety of other circumstances, courts have extended constitutional rights, where they were found to apply, despite the clear prospect of increased administrative inconvenience and burden. See, e.g., *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Id.* at 41–44 (Burger, C. J., concurring); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970); *Almenares v. Wyman*, 334 F.Supp. 512 (S.D.N.Y.), *aff'd as modified*, 453 F.2d 1075 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S. Ct. 962, 30 L.Ed.2d 815 (1972). The Court concludes that in this instance, administrative convenience in enforcing other regulations, assumed to be valid, does not serve as a sufficient basis for the significant restriction this provision imposes on the right of access to non-prescription contraceptive products.

The defendants' second argument for the "pharmacists only" limitation is that it permits purchasers to inquire as to the qualities of various non-prescription contraceptive products and to receive impartial, professional advice as to their use and relative worth. The State has offered no evidence whatever to suggest what unique training or qualifications licensed pharmacists may possess which would specially qualify them to give professional advice with respect to these products. But, we are willing to assume that the training received by licensed pharmacists in areas such as chemistry, physiology, and pharmacology may well make them better qualified than other retailers to render advice concerning the efficacy, proper use, and possible hazards of the various non-prescription contraceptives available.

■■■ Precisely the same view might be asserted, however, with regard to a variety of non-prescription products and patent medicines sold widely and regularly in New York State by pharmacists and non-pharmacists alike. Analgesics, antacids, decongestants, cough remedies, vitamin supplements and laxatives are but a few examples of the many drug items which are widely available not only in pharmacies but in other types of retail outlets such as supermarkets, although some customers might wish to receive professional advice about them before selecting a particular product. Where such advice is desired, it might well be sought from a licensed pharmacist. It does not necessarily follow that all customers would require such advice, or that those who do should be able to purchase the products only from the same or another licensed pharmacist, once the advice has been received. The defendants have suggested no reason, and the Court can perceive none, why the non-prescription contraceptive products under consideration here should be sold to all persons and at all times *only* by persons with the background and training of a licensed pharmacist.

Deference to the State's judgment in this area might be indicated, even without evidentiary support, were there no constitutional right involved. But a restriction which burdens a constitutional right must receive greater scrutiny. See *Eisenstadt v. Baird, supra,* 405 U.S. at 463–65, 92 S.Ct. 1029 (White, J., concurring). The Court concludes that this provision of the statute is not sufficiently related to a legitimate State interest, cf. *Boraas v. Village of Belle Terre, supra,* at 814–15, to justify its infringement of the privacy right—access to non-prescription contraceptives—which is present in this case. The provision, as drafted, is overly restrictive and unconstitutional.

 The Court's conclusion, that the State interests advanced in support of the "pharmacists only" provision of § 6811(8) are insufficient to justify its limitation on the right of access, does not mean that the State may not constitutionally place any limits at all on the sources through which non-prescription contraceptives may be distributed. The State may well have legitimate interests, not asserted in this action, e.g., promoting quality control and sanitary delivery of these products,[22] or protecting the health and safety of those citizens who use them, which would be substantially furthered by other limitations on distribution. If, for example, it were shown that certain non-prescription contraceptives would undergo physical or chemical changes, rendering them ineffective or harmful, as a result of certain temperature or humidity conditions, a prohibition of methods of distribution which would subject the products to such conditions might well be warranted. This might include a ban on sale through vending machines in open areas,

subways, or other locations. A showing that vandalism which could result in contamination of the products was likely might warrant an even wider ban on vending machine distribution. Similarly, were a showing to be made that a particular product might pose a health hazard to users, the State would have a substantial interest in limiting the sale of such a product. However, for the purposes of deciding the questions presented in this case, it is enough that the Court conclude, as it has, that the interests actually asserted here by the defendants are not sufficient to support the limitation contained in this provision of the subject statute.

### PROHIBITION OF ADVERTISEMENT AND DISPLAY

The final provision of § 6811(8) to be considered, insofar as it applies to non-prescription contraceptives, is the statute's absolute ban on any advertisement or display of such products. Plaintiffs attack this prohibition as an unconstitutional limitation on speech protected by the First Amendment.[23] Defendants contend that the speech at issue is commercial and unprotected by the First Amendment. They argue further that citizens should not be exposed to displays and advertisements of contraceptive products which many might find embarrassing and offensive, and that advertising and display of such products will lead to increased promiscuity on the part of the young citizens of the State.

 It cannot be gainsaid that the complete ban on advertisement and display limits the ability of New York State residents to receive information, see *Pell v. Procunier,* 417 U.S. 817, 832, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Kleindeinst v. Mandel,* 408 U.S. 753,

---

22. In their initial brief, submitted in opposition to plaintiffs' motion for the convening of a three-judge court, the defendants asserted that the present statute served to promote quality control. See Defendants' Memorandum (August 1, 1974) at 16. However, the argument was not pursued at oral argument on that motion or at any other time since.

23. Plaintiffs also claim this provision places an impermissible burden on the privacy rights of New York State residents to use and obtain contraceptives. In view of our conclusion with respect to the First Amendment claim it is unnecessary to consider the privacy right.

762–63, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), and the right of individuals to dispense information. See *Eisenstadt v. Baird, supra,* 405 U.S. at 457, 92 S.Ct. 1029 (Douglas, J., concurring); *Griswold v. Connecticut, supra,* 381 U.S. at 482, 85 S.Ct. 1678. The fact that the information affected by the ban may be available from some alternative source, as defendants contend, cannot of itself defeat plaintiffs' First Amendment claims. See *Kleindeinst v. Mandel, supra,* 408 U.S. at 765, 92 S.Ct. 2576. The question becomes, therefore, whether the statute's ban is permissible merely because the speech involved is in the form of an advertisement.

For the purpose of analysis, the advertisements and displays to which this portion of the subject statute might apply can be divided into three categories. The first category, which can be characterized as purely commercial, would include, for example, advertisements and displays of the products of one or more particular manufacturers, intended solely for the purpose of selling these products. The second category, which can be characterized as pure "public interest" material, would include, for example, informational literature and advertisements, unrelated to the products of any particular manufacturer, and displays of non-prescription contraceptives appearing in the context of lectures, family planning clinics, and events of a similar nature. The third category would include those mixed advertisements and displays which contain elements of each of the other two types.

As to advertisements and displays which are purely commercial, it has long been held that commercial speech or advertising is not afforded the same degree of First Amendment protection as other forms of speech. See, e.g., *Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *Valentine v. Chrestensen,* 316 U.S. 52, 54, 62 S.Ct. 920, 86 L.Ed. 1262 (1942); *Banzhaf v. F.C.C.,* 132 U.S.App.D.C. 14, 405 F.2d 1082, 1101–03 (1968), *cert. denied, sub nom. Tobacco Institute, Inc. v. F.C.C.,* 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969). The Supreme Court has just recently declined to define the exact extent to which the First Amendment applies to commercial advertising. See *Bigelow v. Virginia,* —— U.S. ——, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). But, as this Court reads *Bigelow* and the prior decisions discussed therein, it is still the law that purely commercial speech—whatever may be the scope of that term—does not enjoy constitutional protection. Therefore, as to advertisements and displays which are purely commercial, this Court concludes that these may validly be regulated by the State. We do not accept the position, urged by plaintiffs at oral argument, that *any* advertisement of contraceptive products is so linked to the exercise of a protected privacy right that it is protected by the Constitution.[24]

Were this portion of § 6811(8) limited in its effect to a ban on purely commercial activity, the Court might well sustain its constitutionality. It is apparent, however, that the subject statute operates to ban *any* advertisement and display of non-prescription contraceptives, regardless of its educational value, its relation to the public interest, or its connection to the exercise of personal rights of privacy.[25] In other words, the

24. The Court is aware of the language in *Bigelow v. Virginia, supra,* noting that the activity with which the advertisement in that case was concerned—legal abortions—"pertained to constitutional interests." *Id.* at ——, 95 S.Ct. 2222. However, this was one of many factors mentioned by the Court in reaching its conclusion that the advertisement in question was protected by the First Amendment. We do not read *Bigelow,* or any other decision of which we are aware, as standing for the absolute prohibition urged upon us by plaintiffs.

25. The Education Law defines "advertisement" as "all representations disseminated in any manner or by any means, other than by labeling, for the purpose of inducing, or

statute bans "public interest" and mixed as well as purely commercial, advertising and display. It is in these respects that the statute runs afoul of the Constitution.

 The Supreme Court has made it clear beyond doubt that the fact that speech appears in the form of a paid commercial advertisement does not, of itself, deprive it of the protections of the First Amendment. See *Bigelow v. Virginia, supra; Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 384, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). "[C]ommercial activity, in itself, is no justification for narrowing the protection of expression secured by the First Amendment." *Ginzburg v. United States,* 383 U.S. 463, 474, 86 S.Ct. 942, 949, 16 L.Ed.2d 31 (1966).

In *Valentine v. Chrestensen, supra,* the Court was faced with the question of the validity of a statute prohibiting distribution in the streets of printed handbills containing commercial advertising matter, as applied to an individual who was distributing a double-faced bill. On one side was a commercial advertisement and on the other was a protest statement concerning a matter of public interest. See *id.* 316 U.S. at 53, 62 S.Ct. 920. The Court ruled that on the stipulated facts, the conclusion was justified that the "public interest" material had been affixed to the advertising circular only for the purpose of evading an ordinance which lawfully regulated commercial speech.[26] The Court, therefore, upheld the conviction of the petitioner, without attempting to appraise the mixed contents of the communication to determine what was of "public interest"

and what was for commercial profit. See *id.* 316 U.S. at 55, 62 S.Ct. 920. Clearly implicit in the *Chrestensen* decision, however, was the conclusion that under appropriate circumstances, a mixed "public interest"-commercial advertisement would be protected by the First Amendment.

This implicit conclusion was made explicit in *Bigelow v. Virginia, supra.* There, the Court was faced with the application, to an advertisement containing both commercial and "public interest" elements, of a statute making it a misdemeanor to encourage or prompt the procuring of an abortion or miscarriage through an advertisement or by any other means. Viewing the advertisement, which pertained to the availability of legal abortions in the State of New York, in its entirety, the Court concluded that while the advertisement undeniably proposed a commercial transaction, it also "conveyed information of potential interest and value to a diverse audience . . . ." *Id.* at ——; 95 S.Ct. at 2233. After balancing the interests at stake, the Court concluded that the Virginia statute could not constitutionally be applied to the advertisement at issue. *Id.* at ——, 95 S.Ct. 2222. If mixed "public interest"-commercial speech may fall within the ambit of the First Amendment, *a fortiori,* purely "public interest" advertisements and displays would also merit constitutional protection.[27]

 The disposition of this case does not require us to attempt what the *Bigelow* Court declined to do, i.e., to set an abstract standard by which to determine when a particular communication which contains commercial advertising also contains sufficient material which is of public interest, or is sufficiently

---

which are likely to induce, directly or indirectly, the purchase of drugs, devices or cosmetics." N.Y.Educ.Law § 6802(19) (McKinney 1972).

26. Chrestensen had first attempted to distribute the bill in a form containing only the commercial advertising. He was advised by the Police Commissioner that this was

against the law. See *id.* 316 U.S. at 53, 62 S.Ct. 920.

27. One conclusion to be drawn from the foregoing analysis is that it is the nature of the advertisement or display and not its source which, in this Court's view, determines whether or not First Amendment protections obtain.

related to activities protected by the right of privacy, to warrant First Amendment protection for the communication as a whole. It is sufficient for these purposes to reject the suggestion that "public interest" or "public interest"-commercial advertising can never obtain constitutional protection. Regulations affecting protected freedoms must be narrowly drawn. See *Erznoznik v. City of Jacksonville,* — U.S. —, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *N.A.A.C.P. v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964). The New York statute operates to prohibit dissemination of informational material relating to the intimate phases of sexual life protected by the right of privacy and to such matters of public interest and importance as birth control, contraception, and population growth. Clearly, the statute is overbroad. Hence, it must be declared unconstitutional.[28]

■■■ In reaching this conclusion, the Court does not conclude that the State has no legitimate interest in protecting the sensibilities of its citizens, regardless of age, from offensive and objectionable advertisements or displays. Of course, offensiveness is not the measure of free speech. See *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). But certainly, at a minimum, such advertisements can be regulated in accordance with the standards constitutionally permitting regulation of display of obscene material. See, e. g., *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Ginsberg v. New York, supra; Ginzburg v. United States, supra.* But see Note, *On Privacy, supra,* at 708.

This Court's holding is limited to the conclusion that the State may not, consistent with the mandate of the First Amendment, ban all advertising and displays relating to non-prescription contraceptive products.

## III

Having determined that the three provisions of § 6811(8) of the New York State Education Law cannot withstand the scrutiny required by the First Amendment and the Fourteenth Amendment's Due Process Clause, we must consider the appropriate relief to be granted. Plaintiffs have requested both declaratory and injunctive relief. These requests will be considered separately. See *Steffel v. Thompson, supra,* 415 U.S. at 468–69, 94 S.Ct. 1209; *Zwickler v. Koota,* 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

■■ Declaratory relief against a State statute may certainly be granted under the circumstances of this case where prosecution has been threatened, but is not yet pending. See *Steffel v. Thompson, supra,* 415 U.S. at 475, 94 S. Ct. 1209. In part II of this opinion, the Court concluded that each of the three statutory provisions under attack was unconstitutional. Further, having examined the pleadings, briefs, and affidavits of the parties and having heard oral argument on the questions raised, the Court has concluded that there is no genuine issue of material fact to be tried. Therefore, plaintiffs' motion for summary judgment is granted as to the request for declaratory relief. In granting this relief we find the provisions of § 6811(8) of the New York State Education law to be violative of the First and

---

**28.** In reaching the conclusion that the present statute is unconstitutionally overbroad, it is not necessary for the Court to determine whether the advertisements actually placed by any of the plaintiffs constitute protected speech. In the First Amendment area even litigants whose speech could properly be regulated by a narrowly drafted statute may challenge an overbroad statute on its face. See, e. g., *Bigelow v. Virginia, supra* at —, 95 S.Ct. 2222; *Broadrick v.*

*Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, were we to consider this question with respect to the PPA advertisements in the record before the Court, we would conclude that advertisements of this type do represent purely commercial speech which might well be regulable under an appropriate statute.

340

Fourteenth Amendments of the Constitution as set forth above.

■ As to injunctive relief, it is clear that the strict prohibitions of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) do not apply where, as here, no state prosecution has been commenced either prior to the filing of the complaint or before the occurrence of "proceedings of substance" in the federal court. See *Hicks v. Miranda*, —— U.S. ——, 95 S.Ct. 2281, 45 L. Ed.2d 223 (1975); *Steffel v. Thompson, supra*, 415 U.S. at 461–62, 94 S.Ct. 1209; *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1160–61 (2d Cir. 1974). While the Supreme Court as yet has not ruled definitively on the question of whether an injunction may issue against a threatened state prosecution, see *Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), it is established that "[C]onsiderations of equity practice and comity . . . have little force in the absence of a pending state proceeding." *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972). Therefore, the Court is not barred from issuing an injunction under the circumstances of this case.

■ In view of the nature of the rights at stake and the effect of the State statute, the Court concludes that injunctive relief is appropriate in this case. Since there are no genuine issues of material fact, the plaintiffs' motion for summary judgment is also granted with respect to the request for injunctive relief.

■ As to the provision prohibiting the sale or distribution of non-prescription contraceptives to persons under the age of sixteen, the Court has further concluded that injunctive relief should be effective upon entry of this Court's judgment. In addition to impeding the exercise of a constitutionally protected right, enforcement of this prohibition gives rise to the prospect that some of the persons whose rights are burdened may also suffer great and immediate harm resulting from unwanted pregnancy and from venereal disease. There can be no question but that such hardships weigh heavily upon those individuals who experience them. The attendant cost to the community and to society of such consequences, where they occur, is also not unnoticed by the Court. The defendants are therefore enjoined from enforcing the provision of the statute which prohibits sale of contraceptive products to persons under the age of sixteen years of age, insofar as that section applies to non-prescription contraceptives. The effect of this ruling will be to bring the remaining segment of this population abreast of those persons under the age of sixteen to whom the New York State Legislature has already extended access to non-prescription contraceptives.[29]

■ As to the second and third provisions of the statute—those prohibiting sale or distribution by anyone other than a licensed pharmacist and prohibiting advertisement and display—the Court has also concluded that there are no genuine issues of material fact and that these provisions unconstitutionally restrict the exercise of protected rights. We have recognized further, however, that the State may well have legitimate interests sufficient to support provisions which would sweep less broadly through these areas. In recognition of those interests; in light of our view that the State is not to be prohibited entirely from legislating in the areas covered by these provisions; and in the "spirit" of *Younger v. Harris, supra*, we conclude that an injunction should issue against enforcement of these provisions, but that it should be stayed for a period of time. This stay will give the State Legislature the opportunity to enact narrower provisions, if it chooses to, which reflect appropriate constitutional concerns, without depriving the State of all

29. See *supra* at 333–334.

legislation in this area in the interim while such measures are considered.[30]

The defendants are therefore enjoined from enforcing the provisions of § 6811(8) of the New York State Education Law which prohibit sales by any person other than a licensed pharmacist and prohibit advertising and display, insofar as these provisions apply to non-prescription contraceptives. The injunction against enforcement of these provisions is stayed for 120 days following entry of the Court's judgment.

In sum, as applied to non-prescription contraceptives, § 6811(8) of the New York State Education law, as presently drafted, is declared to be unconstitutional in its entirety. As so applied, its enforcement is enjoined. However, the injunction against enforcement of the provisions of the statute relating to distribution by persons other than a licensed pharmacist and relating to advertisement and display is stayed for 120 days. The defendants' motion is denied.

Submit order on notice.

So ordered.

30. The fact that the injunction against these two provisions of the statute is stayed does not mean, of course, that the Court contemplates their being enforced during the interim so as to proscribe constitutionally protected activity. Should the necessity arise, it is well within the power of the State courts, which have been called "the primary guarantors of constitutional rights," see Hart and Wechsler, *The Federal Courts and the Federal System* (2d Ed. 1973) at 359, to determine the Constitutional protection applicable in a particular instance.