Gabrielli, J.
Petitioner has challenged on both First and Fourteenth Amendment grounds the validity of a regulation promulgated by the Commissioner of Education, pursuant to statutory authority, prohibiting the advertising of discount prescription prices. Both Special Term and the Appellate Division have upheld the constitutionality of the regulation which petitioner now seeks to have invalidated by this court.
Petitioner is the supervising pharmacist and owner of U. P. C. Prescription Center of Schenectady, Inc., a pharmacy engaged in providing discount prescription and nonprescription medicines to the public. In February, 1972, the State Board of Pharmacy, a licensing board subject to the supervision of the Board of Regents, directed petitioner to appear and answer the charge that he was engaging in "unprofessional conduct” by advertising discounts on "all drug needs” through local newspapers and indiscriminately distributing two-dollar discount certificates. Shortly thereafter, petitioner commenced *367 this action in the Supreme Court, Albany County, seeking (1) a declaration that the regulation is invalid and (2) a permanent injunction restraining respondent Board of Regents and its agents, including the Board of Pharmacy, from taking any disciplinary action against petitioner pursuant to the challenged regulation.
The following regulation barring discount advertising had been promulgated by the Commissioner of Education:
"Unprofessional conduct. Unprofessional conduct in the practice of pharmacy within the meaning of section 6804 of the Education Law shall include but shall not be limited to the following:
* * *
"(c) a registered pharmacist, or the owner of a pharmacy participating in any plan, agreement or arrangement which advertises fixed or discount prescription prices or permitting any agent or any other person, group or organization to use such advertising in his behalf” (8 NYCRR 63.3).
During the pendency of this action, the regulation was amended, effective June 1, 1972, by replacing former subdivision (c) with new subdivision (c) and adding new subdivision (m), so that the regulation now reads as follows:
"Unprofessional conduct. Unprofessional conduct in the practice of pharmacy within the meaning of section 6804 of the Education Law shall include but shall not be limited to the following:
* * *
"(c) advertising of fixed fees or prices for professional services or the use of the words 'cut rate’, 'discount’ or other words having a similar connotation in connection with the offering of professional services by a pharmacist, the owner of a pharmacy or by any other person, group or organization in behalf of and with the permission of a pharmacist or the owner of a pharmacy, provided, however, that proper actions taken in meeting the requirements of subdivision (m) shall not be construed as constituting advertising;
* * *
"(m) failure to make prescription fee or price information readily available by:
"(1) providing such information upon request and upon the presentation of a prescription for pricing or dispensing; or
*368 "(2) offering to provide such information by posting a sign measuring 9 inches by 12 inches in the window or within the pharmacy at the area where prescriptions are normally received or, in the case of pharmacies located in general merchandising establishments at the registered area reading:
" 'the price for which your prescription will be dispensed will be provided upon request and upon presentation of such prescription for pricing or dispensing.’ ” (8 NYCRR 63.3.)
To sustain the regulation, respondent relies upon two sections of the Education Law, delegating to it the authority to adopt rules and regulations governing the professions generally. Section 6506 of the Education Law provides in pertinent part:
"The board of regents shall supervise the admission to and the practice of the professions. In supervising, the board of regents may:
"(1) Promulgate rules;
* * *
"(9) Establish by rule, standards of conduct with respect to advertising, fee splitting, practicing under a name other than that of the individual licensee (when not specifically authorized), proper use of academic or professional degrees or titles tending to imply professional status, and such other ethical practices as such board shall deem necessary”.
Furthermore, subdivision (9) of section 6509 of the Education Law broadly proscribes professional misconduct and authorizes respondent Board of Regents to define such conduct.
There should be an affirmance. The challenged regulation was , within the power of the Commissioner of Education and the Board of Regents to adopt pursuant to the cited sections of the Education Law (cf. Matter of Bell v Board of Regents, 295 NY 101, 108). Furthermore, the regulation was rationally related to this State’s interest in the preservation of local pharmacies which serve a vital function in the convenient, rapid filling of prescriptions and in the prevention of destructive competition in the pharmaceutical profession. We therefore conclude that the action of the Board of Regents did not contravene the due process guarantees of the United States and New York Constitutions (see North Dakota Pharmacy Bd. v Snyder’s Stores, 414 US 156, 165-167).
We note that section 6826 of the Education Law provides that:
*369 "(1) Every pharmacy shall post a list of drugs together with their current selling price in the manner prescribed by this section.
* * *
"(4) The list shall be conspicuously posted at or adjacent to the place in the pharmacy where prescriptions are presented for compounding and dispensing.”
In light of these provisions, we see no need to decide whether the regulation barring advertisement of discount prices, adopted pursuant to sections 6506 and 6509 of the Education Law, violates a purported consumer "right to know” grounded in the First Amendment of the United States Constitution. Unlike the statute invalidated in Virginia Citizens Consumer Council v State Bd. of Pharmacy (373 F Supp 683, probable jurisdiction noted 420 US 971), where no posting of prescription prices was mandated, the New York regulatory scheme also enables consumers to obtain information concerning the prices of prescription drugs. It is noteworthy that the Commissioner of Education amended the regulation to provide that, in addition to "advertising of fixed fees or prices for professional services”, unprofessional conduct shall also include "failure to make prescription fee or price information readily available by: (1) providing such information upon request and upon the presentation of a prescription for pricing or dispensing; or (2) offering to provide such information "(8 NYCRR 63.3 [m]).
Furthermore, even assuming such a "right to know” were found to exist, petitioner, a pharmacist, does not have standing to assert the rights of consumers (Tileston v Ullman, 318 US 44; Virginia Citizens Consumer Council v State Bd. of Pharmacy., supra, p 685-686), since he is not an organizational or individual representative of the class of persons whose rights are claimed to have been violated (see NOW v State Div. of Human Rights, 34 NY2d 416, 420; NAACP v Alabama, 357 US 449, 458-460).
The advertising prohibited by the Board of Regents is the type of commercial speech to which no First Amendment protection is afforded (Bigelow v Virginia, 421 US 809; Pittsburgh Press Co. v Human Relations Comm., 413 US 376, 384-387; Population Servs. Int. v Wilson, 398 F Supp 321, 337; cf. Valentine v Chrestensen, 316 US 52). Contrary to the assertions of the dissent, this case does not fall within that zone of *370 expression, which, although in a commercial setting, is nevertheless protected by the First Amendment. Unlike Bigelow v Virginia (421 US 809, 822, supra), the regulation here does not prohibit the dissemination of knowledge concerning services intimately related to the exercise of a constitutional right (cf. Roe v Wade, 410 US 113). Similarly, the advertising barred in this case is vastly different from that in New York Times Co. v Sullivan (376 US 254) which involved an expression of views and criticism of official action. The presentation of ideas in a context involving remuneration for the publisher did not remove expression in advertising form from First Amendment protection. In the instant case, we have an invitation to transact business, an offer to engage in a purely commercial transaction. It should be noted, with some emphasis, that the advertising prohibited by the Board of Regents relates exclusively to price competition, an area of particular concern to the State because of the probable deleterious effects of uncontrolled advertising upon the availability of prescription drugs from neighborhood pharmacies.
We think, further, that the court in Bigelow (supra) recognized the validity of State regulation of destructive price competition among professionals, a type of advertising clearly distinguishable from the dissemination of information relating to the availability of services, when it stated that "[advertising, like all public expression, may be subject to reasonable regulation that serves a legitimate public interest” (Bigelow, supra, p 826). The Bigelow decision was circumscribed by the disclaimer that it was not to be considered inconsistent with the Supreme Court’s holdings in cases concerning the regulation of professional activity (Bigelow, supra, p 825, n 10) and the proviso that the court was not deciding the "precise extent to which the First Amendment permits regulation of advertising that is related to activities the State may legitimately regulate or even prohibit” (Bigelow, supra, p 825). At least one other court agrees with our interpretation of Bigelow. A three-Judge United States District Court for the Southern District of New York concluded that after Bigelow, "it is still the law that purely commercial speech—whatever the scope of that term—does not enjoy constitutional protection” (Population Servs. Int. v Wilson, 398 F Supp 321, 337, supra).
The dissent’s conclusion that "States may encompass the speech aspects of commercial activities within their regulations only when State interests meet a test of real necessity, *371 not merely a rational basis test” is patently erroneous and unsupported by Bigelow itself, or, in fact, any other authority. Indeed, the dissent relies only upon a series of cases, cited without comment in footnote 11 of the court’s opinion in Bigelow, all of which deal with statutes regulating the dissemination of ideas rather than commercial transactions. After paying lip service to the standard that (p 826) "advertising * * * may be subject to reasonable regulation that serves a legitimate public interest”, the dissent then infers from Bigelow a test based on "real necessity.” The court, as indicated above did not restrict the State’s regulatory power to areas of "outright” or "potential illegality”. The line differentiating unprotected commercial from "pure” speech was not erased by Bigelow; rather it was redrawn with the recognition that some forms of commercial speech should be entitled to First Amendment protection and that the "commercial speech” label of Valentine v Chrestensen (316 US 52, supra) did not appropriately demarcate the scope of First Amendment protection of speech in a commercial context. In sum, the dissent basically confuses advertising which brings knowledge to the public of the availability of services or drug products with advertising which is related to price competition which has been found to be destructive and which may well prevent the required availability of such services or products to the needy public in neighborhood stores, a service recognized as fulfilling the immediate and emergency needs of the public.
Finally, it is manifest that the prohibition of "discount” and "cut-rate” advertising affects only the manner in which price information is conveyed to the public since other provisions of the State Education Law and the amended Commissioner of Education regulation mandate the posting of price information in conspicuous locations in a pharmacy. Bigelow (supra, p 819) expressly preserved the State’s authority to regulate the "manner in which commercial advertising could be distributed”.
Accordingly, the order of the Appellate Division should be affirmed.